# LEWIS, COMPTROLLER OF THE STATE OF FLORIDA
## *v.* CONTINENTAL BANK CORP. ET AL.

No. 87–1955.   Argued November 28, 1989—Decided March 5, 1990

SCALIA, J., delivered the opinion for a unanimous Court.

*Arthur E. Wilmarth, Jr.*, argued the cause for appellant. With him on the briefs were *Eric J. Taylor*, Assistant Attorney General of Florida, *Charles L. Stutts*, *R. Michael Underwood*, *Albert T. Gimbel*, *J. Thomas Cardwell*, and *Joe A. Walters*.

*Andrew L. Gordon* argued the cause for appellees. With him on the brief were *Bowman Brown* and *Lee D. Mackson.**

JUSTICE SCALIA delivered the opinion of the Court.

This case involves an Illinois bank holding company's challenge to certain Florida banking statutes that are alleged to violate the Commerce Clause, U. S. Const., Art. 1, § 8, cl. 3. We conclude that the case has been rendered moot by 1987 amendments to the Bank Holding Company Act.

## I

Under § 3(d) of the Bank Holding Company Act of 1956 (BHCA), 70 Stat. 134, as amended, 12 U. S. C. § 1842(d), a bank holding company with its principal banking operations in one State may not establish or acquire a bank in another State unless the latter State's statutes specifically authorize it to do so. The BHCA thus effectively permits States to prevent out-of-state holding companies from owning in-state banks. That license for state discrimination applies, however, only if the proposed banking subsidiary is a "bank" as defined in § 2(c) of the BHCA, 70 Stat. 133, as amended, 12 U. S. C. § 1841(c). Until 1987, a banking institution qualified as a "bank" for purposes of the BHCA only if it both accepted demand deposits and engaged in the business of commercial lending. As amended by the Competitive Equality Amendments of 1987, 101 Stat. 554, the BHCA definition was expanded to include all banks whose deposits are insured by the Federal Deposit Insurance Corporation (FDIC). See 12 U. S. C. § 1841(c)(1)(A).

---

*Benna Ruth Solomon* and *Charles Rothfeld* filed a brief for the National Conference of State Legislatures et al. as *amici curiae* urging reversal.

*John L. Warden* and *Michael M. Wiseman* filed a brief for the New York Clearing House Association as *amicus curiae* urging affirmance.

*Andrew L. Frey, Kenneth S. Geller, Andrew J. Pincus, Daniel R. Barney, Robert Digges, Jr.,* and *William S. Busker* filed a brief for the American Trucking Associations, Inc., as *amicus curiae.*

On June 29, 1981, appellee Continental Bank Corporation, a bank holding company with its principal place of business in Illinois, filed an application with the Florida Department of Banking and Finance to establish and operate an "industrial savings bank" (ISB) in Florida. According to the application, "'[a]ll deposit relationships'" would be insured "'to the maximum extent allowed by the [FDIC].'" Juris. Statement 1–2.

Appellant Lewis, Comptroller of the State of Florida and head of the Department of Banking and Finance, refused to process the application on the ground that two Florida statutes, Fla. Stat. § 658.29(1) (Supp. 1980) and Fla. Stat. § 664.03 (14) (Supp. 1980), prohibited out-of-state bank holding companies from operating ISBs in Florida. Continental thereupon filed a complaint in the United States District Court for the Northern District of Florida, claiming that the statutes violated the Commerce Clause, U. S. Const., Art. I, § 8, cl. 3, and praying for declaratory and injunctive relief. The District Court granted summary judgment for the plaintiff, holding that the Florida statutes unconstitutionally discriminated against nonresidents, and ordered Lewis to process Continental's application.

In June 1984, after the District Court had entered judgment, the State of Florida amended its statutes to prohibit the chartering of any new ISBs in the State, whether by resident or nonresident enterprises. Fla. Stat. § 664.02(1) (Supp. 1984). Lewis then moved to amend or alter the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, arguing that the new nondiscriminatory ban had rendered the validity of the challenged statutes moot. The District Court denied the motion, reasoning that the new statute, even if constitutional, did not moot the case because the State's unconstitutional behavior was "capable of repetition, yet evading review." App. 66a. Meanwhile, Continental had moved for an award of attorney's fees under 42 U. S. C. § 1988, arguing that Lewis' enforcement of the stat-

utes had deprived it of its constitutional rights in violation of 42 U. S. C. § 1983. The District Court denied that motion without explanation.

On appeal, the Court of Appeals for the Eleventh Circuit affirmed on the merits issue, though resting its determination that the case was not moot on the different ground that the supervening ban on new ISBs was unconstitutional, since it had the purpose and effect of denying nonresident holding companies access to Florida deposits. The Court of Appeals did not resolve Continental's claim for attorney's fees, but remanded the case to the District Court for an explanation of why that claim had been denied. *Continental Illinois Corp.* v. *Lewis*, 827 F. 2d 1517 (1987).

In August 1987, shortly before the Court of Appeals issued its opinion, there was again a change in the law, this time at the federal level. As part of the Competitive Equality Amendments of 1987, 101 Stat. 554, Congress expanded the BHCA definition of "bank." The new definition, codified at 12 U. S. C. § 1841(c)(1)(A), includes any "insured bank as defined by section 3(h) of the Federal Deposit Insurance Act," which in turn defines "insured bank" as "any bank . . . the deposits of which are insured" by the FDIC. 12 U. S. C. § 1813(h). After this amendment to the BHCA, Lewis filed a petition for rehearing in the Court of Appeals, arguing that the new legislation mooted the controversy because the ISB that Continental proposed to establish would have FDIC-insured deposits and therefore would be a "bank" within the coverage of the BHCA. Such coverage, Lewis argued, would mean that Florida's refusal to permit Continental to establish an ISB, even if discriminatory against interstate commerce, would be authorized by federal law and hence immune from challenge under the Commerce Clause.

The Court of Appeals denied the petition for rehearing in a brief opinion, saying that it did "not agree that the amendments necessarily would make Continental's operation of an ISB in Florida a 'banking' activity in every instance," and

that it could not "now guess what the parties will do or not do as a result of the enactment of the August 10, 1987 [BHCA] amendments." 838 F. 2d 457, 458 (CA11 1988). In addition, the court awarded Continental attorney's fees for the appeal, without explaining the basis for the award, and remanded to the District Court for a calculation of a proper award for the appeal as well as a determination whether an award was appropriate for work done in the District Court.

Lewis appealed to this Court, invoking our jurisdiction under 28 U. S. C. § 1254(2) (1982 ed.), now repealed, 102 Stat. 662, 664. We noted probable jurisdiction. 490 U. S. 1097 (1989).

II

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. *Deakins* v. *Monaghan*, 484 U. S. 193, 199 (1988); *Preiser* v. *Newkirk*, 422 U. S. 395, 401 (1975). To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision, *Allen* v. *Wright*, 468 U. S. 737, 750–751 (1984); *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.*, 454 U. S. 464, 471–473 (1982). Article III denies federal courts the power "to decide questions that cannot affect the rights of litigants in the case before them," *North Carolina* v. *Rice*, 404 U. S. 244, 246 (1971), and confines them to resolving " 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Ibid.* (quoting *Aetna Life Insurance Co.* v. *Haworth*, 300 U. S. 227, 241 (1937)). This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed, or when review was obtained in the

Court of Appeals. *Deakins, supra*, at 199; *Steffel* v. *Thompson*, 415 U. S. 452, 459, n. 10 (1974). The parties must continue to have a "'personal stake in the outcome'" of the lawsuit, *Los Angeles* v. *Lyons*, 461 U. S. 95, 101 (1983) (quoting *Baker* v. *Carr*, 369 U. S. 186, 204 (1962)).

On the record before us, the only evidence of Continental's stake in the outcome was its application to establish and operate an ISB. That application, however, pertained to an FDIC-insured institution, specifying that "all deposit relationships" would be insured "to the maximum extent allowed" by the FDIC. Thus, the stake represented by that application was eliminated by the 1987 amendments to the BHCA, which make it clear that no matter how the Commerce Clause issues in this suit are resolved the application can constitutionally be denied. Continental concedes that, under the amended BHCA, an FDIC-insured ISB is a "bank" within the BHCA definition; that Florida is thus authorized by Congress to exclude insured ISBs owned by nonresident holding companies; and that such exclusion (by virtue of its congressional authorization) does not violate the Commerce Clause.

Continental has argued in this Court that the quoted language of the application meant that the ISB would have insurance if insurance was available, and none if none was available. We think not. "Insured by the FDIC to the maximum extent allowed" is quite different from "insured by the FDIC if possible," or "insured by the FDIC to the maximum extent allowed, if any." It envisions FDIC insurance, but instead of specifying a fixed dollar amount of that insurance (the permissible level of which has varied over the years, see, *e. g.*, 94 Stat. 147) specifies the maximum amount allowable from time to time. The application thus constitutes no evidence that Continental had an intent to establish an *un*insured bank. Nor can it be said that the difference between an insured bank and an uninsured bank is inconsequential, so that an expressed intention to open the one dis-

plays as well an intention to open the other. Particularly at a time when prospective depositors have been reading news of widespread bank failures, FDIC insurance may well be seen as essential to viability.

Continental contends that it still has a claim for relief because its complaint sought not only the specific relief of ordering Lewis to process the original application, but also a declaration that the Florida statutes were unconstitutional and an injunction against their enforcement in the future. The BHCA amendment, it argues, does not render that requested relief nugatory insofar as it applies to uninsured banks. That may well be so, but the Article III question is not whether the requested relief would be nugatory as to the world at large, but whether *Continental* has a stake in that relief. Even in order to pursue the declaratory and injunctive claims, in other words, Continental must establish that it has a "specific live grievance" against the application of the statutes to uninsured ISBs, *Golden* v. *Zwickler*, 394 U. S. 103, 110 (1969), and not just an "'abstract disagreemen[t]'" over the constitutionality of such application, *Thomas* v. *Union Carbide Agricultural Products Co.*, 473 U. S. 568, 580 (1985) (quoting *Abbott Laboratories, Inc.* v. *Gardner*, 387 U. S. 136, 148 (1967)). As we have discussed, nothing in the record establishes that. Continental informs us that under Florida law it remains free to amend its application so as to seek an uninsured rather than an insured ISB. Perhaps so. But it could also be said that every bank in the country is free to file an application seeking an uninsured Florida ISB. In the one case as in the other, the mere power to seek is not an indication of the intent to do so, and thus does not establish a particularized, concrete stake that would be affected by our judgment. Continental's challenge to the constitutionality of the Florida statutes' application to an uninsured bank that it has neither applied for nor expressed any intent to apply for amounts to a request for advice as to "what the law would be upon a hypothetical state of facts," *Aetna Life Insurance Co.*

v. *Haworth*, 300 U. S., at 241, or with respect to "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas, supra,* at 580–581, quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984).

Continental sought to supplement the record in this Court, after argument, by filing the affidavit of an officer of one of its subsidiaries, averring Continental's interest in opening an uninsured Florida ISB, and explaining its failure to file an updated application for such a bank. In the circumstances of the present case, we are not disposed to accept such an affidavit as dispositive, without providing petitioner the opportunity of rebuttal. At the time Continental's challenge to denial of its application for an insured ISB was mooted by the amendments to the BHCA, this litigation had been in progress for almost seven years. An order vacating the judgment on grounds of mootness would deprive Continental of its claim for attorney's fees under 42 U. S. C. § 1988 (assuming, *arguendo,* it would have such a claim), because such fees are available only to a party that "prevails" by winning the relief it seeks, see *Rhodes* v. *Stewart*, 488 U. S. 1 (1988); *Hewitt* v. *Helms*, 482 U. S. 755 (1987). This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim, see *Diamond* v. *Charles*, 476 U. S. 54, 70–71 (1986). Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs. Reasonable caution includes, we think, not accepting as conclusive the *ex parte* affidavit of the party seeking fees, without providing the other party the opportunity to adduce controverting facts that show the alleged dispute to be "abstract, feigned, or hypothetical." *Sibron* v. *New York*, 392 U. S. 40, 57 (1968).

In any event, whenever possible (and it is possible where the decision under review is that of a federal court) the evaluation of such factual contentions bearing upon Article III jurisdiction should not be made by this Court in the first instance. We therefore decline to accept Continental's supplementation of the record in this Court.

Finally, Continental urges that its suit remains justiciable even if it has no concrete interest in application of the statutes to uninsured banks, because its dispute with Florida is "capable of repetition, yet evading review." This contention is twice wrong. We have permitted suits for prospective relief to go forward despite abatement of the underlying injury only in the "exceptional situations," *Los Angeles* v. *Lyons*, 461 U. S., at 109, where the following two circumstances were simultaneously present: "'(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Murphy* v. *Hunt*, 455 U. S. 478, 482 (1982) *(per curiam)* (quoting *Weinstein* v. *Bradford*, 423 U. S. 147, 149 (1975)). Neither of these requirements is satisfied here. Since Florida's allegedly unconstitutional action is no longer unconstitutional with respect to insured ISBs, there is no "reasonable expectation" that Continental will suffer the same wrong again—*unless*, of course, it intends to establish an uninsured ISB, which does not appear on this record. Cf. *California Coastal Comm'n* v. *Granite Rock Co.*, 480 U. S. 572, 578 (1987); *Press-Enterprise Co.* v. *Superior Court of California, Riverside County*, 478 U. S. 1, 6 (1986). Nor is the State's refusal to issue a bank charter the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to "evad[e] review." See, *e. g.*, *Burlington Northern R. Co.* v. *Maintenance of Way Employes*, 481 U. S. 429, 436, n. 4 (1987) (injunction on secondary picketing in railroad labor dispute); *Nebraska Press Assn.* v. *Stuart*, 427 U. S. 539,

546–547 (1976) (protective order on press coverage of criminal trial). If Continental applies for and is denied a charter for an uninsured bank in Florida, there will be ample time to obtain judicial review of the denial.

## III

Our ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss. See, *e. g.*, *Deakins* v. *Monaghan*, 484 U. S., at 204; *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 39–40 (1950). However, in instances where the mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, our practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully. See *Diffenderfer* v. *Central Baptist Church of Miami, Inc.*, 404 U. S. 412, 415 (1972). That is essentially the situation here. The need for Continental to set forth its interest in an uninsured ISB could not have been apparent to anyone until the BHCA amendments were passed. This did not occur until the case had already been argued and submitted in the Court of Appeals. Had Florida's petition for rehearing on the basis of the amendments been granted, Continental could properly be criticized for not supplementing the record at that point. In fact, however, the petition was denied, and we do not think Continental was negligently sleeping on its rights not to take the extraordinary step of seeking to supplement the record at the appellate level merely because the motion was pending.

Accordingly, we vacate the judgment and remand for the Court of Appeals to consider (or to remand for the District Court to consider) such material as may be submitted by both parties in supplementation of the record, bearing upon Continental's concrete interest in the grant of an application for an

uninsured Florida ISB. Since the judgment below is vacated on the basis of an event that mooted the controversy before the Court of Appeals' judgment issued, Continental was not, at that stage, a "prevailing party" as it must be to recover fees under § 1988, see *Rhodes* v. *Stewart*, 488 U. S., at 3–4. Whether Continental can be deemed a "prevailing party" in the District Court, even though its judgment was mooted after being rendered but before the losing party could challenge its validity on appeal, is a question of some difficulty, see, *e. g.*, *Palmer* v. *Chicago*, 806 F. 2d 1316, 1321 (CA7 1986), that has been addressed by neither court below. We decline to resolve that, as well as the related question whether § 1988 fees are available in a Commerce Clause challenge.

The judgment is vacated, and the cause is remanded for such proceedings as are appropriate and consistent with this opinion.

*It is so ordered.*