ASSOCIATION OF AMERICAN PHY-
SICIANS AND SURGEONS, INC.,
et al., Plaintiffs,

v.

Hillary Rodham CLINTON,
et al., Defendants.

Civ. A. No. 93–0399 (RCL).

United States District Court,
District of Columbia.

Dec. 1, 1994.

Thomas R. Spencer, Spencer & Klein, Miami, FL and Frank M. Northam, Webster Chamberlain & Bean, Washington, DC, for plaintiffs.

Robert S. Whitman, Nussbaum & Wald; and Thomas W. Millet IV, Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on defendants' motion to dismiss this case as moot. Because the case is not yet legally moot, but is "almost" moot, the court will give defendants one last opportunity to make the case moot.

After the court denied defendants' summary judgment motion and decided to conduct a trial, defendants sought to negotiate a settlement of this case. When plaintiffs refused to settle, defendants unilaterally determined to publicly release virtually all of the documents created by the Health Care Reform Task Force's interdepartmental working group, treating the documents as though the working group had been subject to the Federal Advisory Committee Act ("FACA"). Defendants then moved to dismiss this case as moot.

After an initial hearing on defendants' motion to dismiss on October 13, the court authorized plaintiffs to conduct discovery on the mootness question. After that discovery was concluded, another round of briefs was filed and additional arguments were heard on November 10. At that time, the court ordered defendants to produce for *in camera, ex parte* inspection, all of the documents which had been removed by White House officials from the boxes of working group records collected at the White House before they were sent to the National Archives for public release. The court has now reviewed a sampling of these documents in the 13 boxes delivered to the court, and has reached the following conclusions:

1. Many documents are undated, so it cannot be determined on the face of the documents the dates on which they were created.

2. Some documents that are in packages labelled "Post 5/31/93" are in fact dated prior to May 31, 1993.

3. Many documents have been labelled "non-responsive." It is not apparent why some are so labelled.

The defendants' basic argument is that the interdepartmental working group was formally terminated on May 31, 1993 and that it did not meet again thereafter, except for two brief ceremonial-type appearances on June 7 and September 18. Work continued, of course, on health care reform after May 31. This work primarily involved refining the President's options, preparing a plan, preparing proposed legislation, and soliciting public support for the Administration's proposals— work different than that performed by the interdepartmental working group that had produced a series of Tollgate and Briefing Books and option papers, all of which have been made public. It is uncontradicted that less than 25 senior government officials participated in this effort after May 31. It appears to the court that the interdepartmental working group was effectively disbanded on May 31, 1993. The fact that some of its members participated in the follow-up efforts does not negate the fact that the interdepartmental working group itself was terminated on May 31, and did not function after that date. Plaintiffs have produced no evidence to contradict the testimony of Ira Magaziner at his deposition that the new "working group" of 25 senior government officials was "completely different" than the interdepartmental working group. Nor have plaintiffs pointed to evidence that any of these 25 individuals was not a government employee.

■ It appears, however, that even after May 31 some documents continued to be created by members of the interdepartmental working group, that related to the group's original efforts and that were not part of the process of this new and different working group. Even if such documents were created after May 31, it appears they would still be subject to production if the interdepartmental working group was subject to FACA. Accordingly, before the court can find that

this case is in fact moot, defendants will have to produce such documents. This may require an additional search directive. Moreover, it is now clear that there are pre-May 31 documents which should have been produced which have not been produced. Additionally, the "non-responsive" category accorded to numerous non-public documents does not facially appear to be proper in some instances. And finally, at oral argument the defendants conceded that they still have not made public certain electronic versions of documents that they intend to provide to the Archives. Until they do so, this case will remain "almost" moot, but not moot.

Defendants' creation of an adequate index and provision of an explanation as to the reasons why each document continues to be withheld from the public, will allow the court to make an informed decision about which documents must be released to satisfy the court that this case is now moot. The court deems this course preferable to denying the government's mootness motion, because the court will simply be ensuring that the defendants carry out what they have represented their intent to be: making public all interdepartmental working group documents as though the group were subject to FACA.

■ The second major argument by which plaintiffs seek to prevent a mootness determination is their claimed entitlement under FACA to review records pertaining to the costs of the interdepartmental working group (assuming it was subject to FACA). The court agrees with defendants that nothing in FACA or its implementing regulations creates a right of public access to such information or allows plaintiffs to sue to compel the production of such information. These financial reports are intended to assist Congress in its oversight function; Congress is perfectly capable of obtaining from defendants whatever financial information it desires. Judicial intervention is unwarranted, and the public access provision of section 10(b) of FACA applies only to records "made available to or prepared for or by each advisory committee." Records pertaining to the expenses of such an advisory committee are not within the scope of section 10(b). Plaintiffs have nothing more than a generalized grievance regarding this financial information, and therefore no standing. *See, e.g., United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1973).

■ Plaintiffs' third major argument against mootness is a claim that defendants have not gathered documents from all of the "participants" in the interdepartmental working group process. Section 10(b) of FACA covers only documents "which were made available to or prepared for or by" an advisory committee. Plaintiffs have not provided any evidence whatsoever that any person on their list of over 1,000 alleged participants now possesses any document not now available at the National Archives that was "made available to or prepared by or for" the interdepartmental working group or any of its subgroups. Defendants have compiled their collection of documents by using their own database list of 630 individuals who actively participated in the interdepartmental working group process. Marjorie Tarmey's uncontradicted deposition testimony indicates that all Cluster Group leaders were asked to identify "regular attendees" of working group meetings, so that the White House could keep track of "who was participating and who the participants" were. This database was created contemporaneously, and it was used for—among other things—preparing certificates of appreciation for participants, inviting participants to a ceremony at the White House where the President and Mrs. Clinton thanked them for their work, and inviting participants to the two post-May 31 sessions where Mr. Magaziner briefed them on the Administration's ongoing efforts to reform health care. This database list appears to generally comply with the D.C. Circuit's holding that a member of a FACA committee is one who "regularly attends and fully participates in working group meetings." *Association of American Physicians and Surgeons v. Clinton,* 997 F.2d 898, at 915 (D.C.Cir.1993).

Defendants have adequately demonstrated the flawed methodology utilized by plaintiffs in creating their own list of names. But in any event, as noted above, plaintiffs have failed to show that any person on their list possesses a single working group document

that is not publicly available at the Archives. Nor have plaintiffs persuaded the court that defendants need to make efforts to contact *additional* people (beyond the 630) to see whether all appropriate documents have been gathered.

Plaintiffs have also argued that the National Archives' standard operating procedures for granting public access to documents are deficient. The court rejects this argument; it is important that the integrity and security of these original papers be maintained for all interested members of the public.

Plaintiffs have also questioned whether the President will withdraw public access once this case has been dismissed. The court is satisfied with defendants' assurances in this regard; plaintiffs' concerns appear to be unfounded.

■ Plaintiffs' suggestion that a declaratory judgment might be appropriate even if the working group has been terminated and all appropriate working group documents have been publicly released is also rejected. At that point, there will simply be no continuing case or controversy for judicial resolution. Nor will there be any basis for injunctive or other equitable relief. The case will in fact be moot, and defendants will be legally entitled to dismissal.

The court understands plaintiffs' frustration with the defendants' misconduct during the course of this litigation, and the court intends to impose sanctions here. Sanctions, however, are a collateral matter. The law is clear that the issue of sanctions does not keep a case from being moot. *See e.g., Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990); *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 480, 110 S.Ct. 1249, 1255, 108 L.Ed.2d 400 (1990). If this case is in fact moot, the court has no discretion; the case must be dismissed. The court will then deal with sanctions as a collateral matter.

Since it appears that this case is likely to be dismissed as moot, the court will conduct a scheduling conference in chambers at 2:00 p.m. on December 2, 1994, to be followed by a status conference in open court in order to schedule further proceedings herein.

**SO ORDERED.**