**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN FERRONE; TERESA MCCLURG;
JOHN FERRONE, President of an
unincorporated association, for
himself and all other members of
such association aka The Fort
Meade Flying Activity,
<u>Plaintiffs-Appellants,</u>

and

HECTOR J. SANTA ANNA, on behalf
of themselves and all others
similarly situated,
<u>Plaintiff,</u>

No. 96-1817

v.

WILLIAM J. PERRY, Secretary of
Defense; TOGO D. WEST, JR.,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-95-2906-AMD)

Argued: May 8, 1997

Decided: July 8, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges, and
CURRIE, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Peter Baldwin Turney, Baltimore, Maryland, for Appellants. Jeffrica Jenkins Lee, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** John E. Harris, Sr., Baltimore, Maryland, for Appellants. Frank W. Hunger, Assistant Attorney General, Lynne Ann Battaglia, United States Attorney, Barbara C. Biddle, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

The present case is one which should never have been brought in federal court. The Plaintiffs' claims fail on several grounds, any one of which should have indicated to competent counsel that suit in this action was unadvisable. The suit lacks subject matter jurisdiction since it is not ripe. In addition, the Plaintiffs may lack standing and their original cause of action may be moot. Moreover, on substantive grounds, the Plaintiffs have absolutely no legal argument which would substantiate their claim.

I. FACTS

In 1988, Congress passed the Base Closure Realignment Act ("BRAC"), 10 U.S.C.A. § 2687 (West Supp. 1994), Title II of Pub. L. 100-526, 102 Stat. 2623 (1989). BRAC authorized the Secretary of Defense to close all military installations recommended for closure by

the Base Closure Commission. Part of Fort Meade Army Base, including Tipton Army Airfield ("TAA"), was included for closure as part of the Commission's report.

The Act provides that the Secretary shall close all installations recommended in the report by September 30, 1995. BRAC§ 201, 102 Stat. 2627 (1989). In addition, the Act specifically prohibited the closure of the bases in the report if any base in the report was not closed.
BRAC § 202, 102 Stat. 2627.

Closure under 32 C.F.R. 91.3 is defined as:

> (b) Closure. All missions of the base have ceased or have been relocated. All personnel (military, civilian, and contractor) have either been eliminated or relocated except for the personnel required for caretaking and disposal of the base or personnel remaining in authorized enclaves.

The Army Judge Advocate General ("JAG") interpreted this provision to mean that once a base or a part of a base was closed, no military activity or organization associated with the military could use the area closed.

Plaintiffs in the instant case are the members of the Fort Meade Flying Activity ("FMFA") and John Ferrone as their representative.[1] The Fort Meade Flying Activity is a nonappropriated fund instrumentality ("NAFI")[2] of the Army which operated at TAA prior to its closure.

_____

[1] All plaintiffs are collectively referred to as FMFA.
[2] Army regulations define NAFIs

3-1. Nonappropriated fund instrumentalities

> a. Every NAFI is legally constituted as an "instrumentality of the United States." Funds in NAFI accounts are Government funds, and NAF property, including buildings, is Government property. . . .

> This means that --

> (1) Each NAFI operates under the authority of the U.S. Government in accordance with applicable Federal laws and departmental regulations.

The FMFA included active duty and retired military, and Department of Defense ("DOD") civilian personnel. Members of the FMFA received tremendous benefits from the Army. Members parked their airplanes for free at TAA, obtained cheaper liability insurance from
DOD, and purchased fuel at wholesale prices. Since TAA's closure, FMFA has moved its planes to Lee Airport in Annapolis. FMFA sought a declaratory judgment stating that under BRAC, FMFA may continue to operate at TAA even after TAA closed. Furthermore, FMFA argues that the Army failed to provide it with notice as required by § 204(b)(3) of BRAC.

Section 204(b)(3), as originally enacted provided:

> (3) Before any action is taken with respect to the disposal or transfer of any real property or facility located at a military installation to be closed or realigned under this title, the Secretary shall notify all departments and other instrumentalities (including nonappropriated fund instrumentalities) within the Department of Defense of the availability of such property or facility, or portion thereof, and

_____

> (2) [NAFIs] are entitled to the same sovereign privileges and immunities as the Federal Government accorded by Federal law.

> (3) Applicable DOD instructions and directives and implementing regulations have the force and effect of law.

> b. NAFIs --

> (1) Are administered by military or civilian personnel acting in an official capacity.

. . . .

> (5) expend resources to support MWR [morale, welfare and recreation] programs from which NAF revenues were derived.

. . . .

> (9) Are considered integral and essential to the conduct of the
> military mission.

AR 215-1, § 3-1.

4

may transfer such property, facility, or portion, without reimbursement, to any such department or instrumentality. . . . This paragraph shall take precedence over any other provision of this title or other provision of law with respect to the disposal or transfer of real property or facility located at a military installation to be closed or realigned under this title.

Section 204(b)(3) was repealed by the Congress, and the district court determined that § 204(b)(3) was inapplicable because of Congress's repeal. However, Congress reinstated § 204(b)(3) as part of Pub. L. 104-201, 110 Stat. 2788. The new § 204(b)(3) removes any reference to notice but states that the Secretary of Defense _may_ transfer real property or facilities located at military installations to be closed to a NAFI.

FMFA argues that the Army failed to provide notice as required by § 204(b)(3). In addition FMFA argues that since § 204(b)(3) specifically provides that NAFIs may receive "closed" property that NAFIs must be able to occupy that property.

The district court rejected Plaintiff's argument on the merits. It held that the decision was within the Army's discretion and that since § 204(b)(3) had been repealed Plaintiffs could not rely on it to support its case. Plaintiffs requested that the district court amend its judgment and determine (1) whether they should be allowed to return to TAA if it should be returned to civilian control and (2) the rights of the parties in the fuel system purchased by FMFA.

II. DISCUSSION

The FMFA originally sought to stop the closure of TAA. Since TAA has been closed, such a request is obviously moot. FMFA now seeks a judgment by this Court that FMFA may return to TAA once TAA is reopened by a civilian operator. At the present time, the Army is currently involved in cleaning up unexpended ordnances at TAA, and the airport has not been sold to a private operator. Furthermore, it is unclear if TAA will ever be sold to a private operator and if that operator will permit FMFA to operate at the new facility.

5

Federal courts are only permitted to adjudicate "actual, ongoing cases or controversies." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990). The Supreme Court has set out a two part test for determining whether an issue is ripe. <u>Abbot Lab. v. Gardner</u>, 387 U.S. 136, 148-149 (1967). First, the issue must be fit for judicial decision, and second, the petitioning party must experience hardship due to the court's action. <u>Abbot Lab.</u>, 387 U.S. at 149.

In the instant case, a controversy does not exist. TAA is closed and the Department of Defense is actively cleaning up environmental problems and unexploded ordnances. There is no guarantee that TAA will be sold and there is certainly no guarantee that TAA will ever operate as a civilian airport.

The issue before us is not ripe and the Court is being asked to render an advisory opinion. FMFA asks the Court to determine that if TAA becomes suitable for sale, and if it is sold to a private party, and if that party operates the facility as an airport, then FMFA may operate at TAA. The Court declines to enter into the folly and conjecture suggested by FMFA.**3**

In addition, we find that the Plaintiffs fail the second part of the <u>Abbot</u> test. FMFA will not experience an unnecessary hardship by our failure to consider the case at bar, since its claim lacks substantive merit. Thus, even if we were to consider the claim on its merits, FMFA's claim would still fail. First, it is well within the Army's discretion to take a strict reading of BRAC in order to avoid possible violations of the law. If the Army believes that the operation of a flying activity on a closed Army base might violate BRAC, it is within the Army's discretion to prohibit an Army flying activity from operating at the closed Army airfield.**4**

---

**3** We also note that there is a serious question of whether the Plaintiffs in the instant case have standing to sue. However, since we find that the issue is not ripe, we decline to reach the issue of whether the Plaintiffs have standing.

**4** Section 204(b)(3) provides that the Secretary of Defense <u>may</u>

transfer
real property or facilities located at closed Army installations to
a NAFI.
It however does not state that the Secretary of Defense <u>must</u> do so,
nor
does it prohibit the Army from exercising caution and avoiding any
pos-
sible violation of BRAC.

6

In addition, flying activities are governed by Army regulations. Army regulations prohibit the establishment of a flying activity at any installation where there is not an active Army flying unit. <u>See</u> AR 215-1, Appendix M, M-1.b (1995).**5** Thus, Army regulations clearly prohibit the establishment of a flying activity at TAA since there is no longer an active Army air unit at Fort Meade. If a flying activity cannot be established at TAA, it is not unreasonable for the Army to conclude that a flying activity also cannot operate at that same location.

It is important to note that the FMFA was created by the Army to promote morale, welfare and recreation of its personnel and the Army has discretion about what activities and organizations it will sponsor in this regard. It is certainly within the Army's discretion to prohibit flying activities from operating at specific locations. It is also completely rational for the Army to determine that flying associations may only operate at a facility which has an active army air unit. What is irrational, is the claim by FMFA, an organization created by the Army at the Army's discretion, that the Army must let the FMFA operate at a closed Army airfield. Thus, even if BRAC would allow FMFA to operate at TAA, other Army regulations would prohibit such authorization.

Plaintiffs also ask the Court to determine the rights of the parties regarding a fuel system purchased by the FMFA. The district court did not rule on this issue and the issue is not properly before the Court. However, we note that if the fuel system is the property of the FMFA, a NAFI, Army regulations adequately deal with the disposition of NAFI property. <u>See</u> AR 215, § 12-14.a(3).

FMFA has received tremendous discretionary benefits from the Army during FMFA's operation at TAA. The Army has now decided that FMFA's operation at TAA is no longer proper. The Army should

_____

**5** At oral argument the government argued that AR 215-2 (1990) prevents a flying activity from operating at an installation unless there is an active Army air unit. The regulation cited by the government is no longer in force, and the proper regulation is AR 215-1, Appendix M. AR 215-

1 prohibits the establishment of a flying activity unless there is an active
Army air unit.

7

be able to eliminate a discretionary benefit such as this one without
having to undergo frivolous suits. Although the present case is dis-
missed because the Court lacks subject matter jurisdiction to consider
the case, we warn the parties that this is not an invitation to refile the
suit at a later time. The Army clearly has the discretion to prevent
FMFA from operating at TAA, and future frivolous suits on the same
subject will not be looked at kindly by this Court.

AFFIRMED

8