The UNABOM TRIAL MEDIA
COALITION, Petitioner,

v.

U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFOR-
NIA (SACRAMENTO), Respondent,

United States of America; Theodore
John Kaczynski, Real Parties
in Interest.

No. 97–71318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1998.

Decided June 7, 1999.

Charity Kenyon, Riegels Campos &
Kenyon LLP, Sacramento, California, for
the petitioner.

Joseph Douglas Wilson, Assistant Unit-
ed States Attorney, Washington, D.C., for
respondent and real party in interest Unit-
ed States of America.

Daniel J. Broderick, Assistant Federal
Public Defender, Sacramento, California,
for real party in interest Theodore John
Kaczynski.

Before: LAY,* KOZINSKI and T.G. NELSON, Circuit Judges.

PER CURIAM:

The Unabom Trial Media Coalition ("Media"), a group of newspapers and broadcasting companies, petitions for a writ of mandamus challenging the district court's closure of various aspects of the pretrial proceedings in the case of Theodore John Kaczynski, the infamous "Unabomber." We dismiss the petition as moot.

I

Kaczynski's trial promised to be one of the most publicized and controversial of recent years. Media accordingly wished to have full access to all pretrial matters and proceedings, but the district court withheld certain information until after Kaczynski's guilty plea on January 22, 1998. Media now raises a laundry list of challenges to the court's pretrial orders and rulings, the highlights of which are as follows: The district court ordered that release of the jurors' and their spouses' names, addresses, and places of employment, be withheld until after discharge, and prohibited any photographs, pictures or sketches of the jurors while within the environs of the courthouse. The court also provisionally sealed portions of the government's Fed.R.Evid. 404(b) motion until it was determined whether the highly inflammatory material described therein was admissible. Finally, the court used its inherent powers to order Kaczynski to prepare an amended notice informing the government of the specifics of his mental status defense. However, the court treated the notice as part of discovery and, therefore, not subject to Fed.R.Crim.P. 12.2(b)'s filing requirements.

* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by desig-

Shortly after Kaczynski pled guilty, the district court released the information Media had requested.

II

■■ Though our Article III jurisdiction extends only to actual cases and controversies, the Supreme Court has "recognized ... that jurisdiction is not necessarily defeated simply because the order attacked has expired, if the underlying dispute between the parties is one 'capable of repetition, yet evading review.' " *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (quoting *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)); *see also Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 6, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*); *Phoenix Newspapers, Inc. v. United States Dist. Court,* 156 F.3d 940, 945 (9th Cir.1998). A dispute is capable of repetition if "there [is] a reasonable expectation that the same complaining party would be subjected to the same action again"; it is likely to evade review if "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam); *see also Cammermeyer v. Perry,* 97 F.3d 1235, 1238 (9th Cir.1996). The Supreme Court has instructed that this exception to mootness applies only in "exceptional situations," and only when both factors are "simultaneously present." *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), and *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 481, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)) (internal quotation marks omitted).

nation.

High-profile criminal cases are a staple of broadcast and print news, and one can reasonably expect courts to issue closure orders in such cases in the future. Though criminal trials are presumptively open to the public, *see Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 605, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *United States v. Brooklier,* 685 F.2d 1162, 1167 (9th Cir.1982), a court may order closure of a criminal proceeding if those excluded are afforded a reasonable opportunity to state their objections and the court articulates specific factual findings supporting closure, *see Brooklier,* 685 F.2d at 1167–68. Such findings must establish the following: "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Publ'g Co. v. United States Dist. Court,* 920 F.2d 1462, 1466 (9th Cir.1990).

Post-trial release of previously sealed transcripts does not necessarily render a case moot. *See Brooklier,* 685 F.2d at 1173; *see also Phoenix Newspapers,* 156 F.3d at 945. In both *Brooklier* and *Phoenix Newspapers,* the press challenged the district courts' failure to fulfill the procedural prerequisites to closure: The district court in *Phoenix Newspapers* offered only conclusory justifications for sealing certain transcripts and did not hold a hearing on the press's objections to a post-trial closure order, *see Phoenix Newspapers,* 156 F.3d at 949–50; in *Brooklier,*

the district court made insufficiently specific findings and provided no prior notice to the press of its intention to exclude them from the proceedings, *see Brooklier,* 685 F.2d at 1167–69. We reiterated the *Brooklier* rule in *Phoenix Newspapers,* holding that "if a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives [and][i]f objections are made, a hearing on the objections must be held as soon as possible." *Phoenix Newspapers,* 156 F.3d at 949. The court may then seal the document only if it "specifically explain[s]" its reasons and those reasons are supported by the record. *Id.* at 950. We determined in both cases that the "capable of repetition, yet evading review" exception applied because the press was reasonably likely to face similarly short-lived closure orders in the future. *See Phoenix Newspapers,* 156 F.3d at 946; *Brooklier,* 685 F.2d at 1165.

Here, Media challenges the district court on very different grounds. Media does not dispute that the court afforded it ample opportunity to be heard; nor does it claim that the court failed to make specific factual findings. Instead, Media argues that the court's findings were insufficient to support the closure orders. We are thus presented, not with the procedurally deficient closure orders unsupported by specific factual findings of *Brooklier* and *Phoenix Newspapers,* but with procedurally sound orders which were supported by numerous factual findings.[1] Because Media challenges only the sufficiency of the

---

1. Media does complain that the district court "predetermined" its decision to impanel a partially anonymous jury because it sent notice to potential jurors prior to entering its closure order that their names would not be disclosed to the public before or during trial. Additionally, Media demanded access to transcripts of in camera conferences in which the jury anonymity issue was discussed, which Media points to as further evidence that the court prejudged the issue. However, not only was the notice to jurors not binding on the court, it was sent to jurors *after* the court had already entered its September 5, 1997, order

announcing that it was "inclined" to withhold the jurors' information and inviting Media and the public to file objections and participate in a hearing scheduled for later that month. Furthermore, there is no error to correct with respect to the transcripts of in camera conferences as the district court released all such transcripts upon Media's request. As Media does not claim that the district court failed to conduct hearings on their objections or make findings in support of closure as required by *Brooklier* and *Phoenix Newspapers,* they have alleged no relevant procedural errors.

district court's factual findings, it must show both that there is a "reasonable expectation" that it will be excluded again in *a case presenting essentially the same factual circumstances,* and that its injury is so intrinsically limited in duration that it could not be fully litigated in federal court. *Cf. Cammermeyer,* 97 F.3d at 1238.

Media has not made either showing. Contrary to Media's contention that the district court ordered closure based merely on a vague concern that the extensive publicity surrounding Kaczynski would taint the proceedings, the record reveals that the court acted in response to the particular, and highly idiosyncratic, circumstances of this case.[2]

Kaczynski's impending trial attracted extraordinary attention from the news media, the general public and crackpots nationwide, and managed to stir up "deep passions" unusual even for high-publicity trials. *Cf. United States v. Branch,* 91 F.3d 699, 724 (5th Cir.1996). The district court found substantial evidence that many people associated with the trial had received threats or had been harassed by the press and members of the public, and concluded that the jurors would be subject to similar threats and harassment unless their identifying information was withheld until after discharge. Moreover, it was not just that certain individuals had been threatened or harassed, but the distinctly menacing and pervasive nature of these

intrusions that concerned the court.[3] Similarly, the court provisionally sealed portions of the government's Fed.R.Evid. 404(b) motion because of the exceedingly inflammatory evidence it contained-including Kaczynski's statements regarding uncharged bombings-and not merely out of some general apprehension that the evidence might turn out to be inadmissible. As for Media's claim that it was entitled to have access to Kaczynski's specific notice to the government of his mental status defense, we note that Kaczynski refused to submit to examinations by the government's psychiatric experts or to cooperate with his lawyers on this defense. Under these circumstances, the court treated the notice as more akin to discovery, which is generally not open to the public, *see Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32–34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), than to any actual intent by Kaczynski "to introduce expert testimony relating to a mental disease or defect or any other mental condition" pursuant to Fed. R.Crim.P. 12.2(b).

Considering the totality of the district court's findings and the peculiar context within which they were made, we are struck by the acutely case-specific nature of the court's orders. To establish a reasonable expectation that Media will suffer these same injuries in the future, it would have to show that the circumstances of this case are likely to recur. While there will,

---

**2.** Procedural irregularities, as alleged in *Phoenix Newspapers* and *Brooklier,* are inherently less case-specific than the particular factual findings that support closure orders in a particular case. It is therefore far more likely a claim of procedural error will be found to be capable of repetition. We do not read *Phoenix Newspapers* and *Brooklier* as holding that closure orders in criminal cases never become moot, no matter how case-specific or idiosyncratic the alleged error happens to be. Any such interpretation would put us into conflict with the Supreme Court's holding that the capable of repetition yet evading review exception to the mootness doctrine must be read narrowly. *See Lyons,* 461 U.S. at 109, 103 S.Ct. 1660 ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named

plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.").

**3.** For example, a prosecutor submitted an affidavit stating that a group of people had approached a potential witness's house and threatened physical harm to the witness and his family. The Federal Defender stated that his office had received a publicly distributed document listing 18 so-called "Unabom witnesses," which suggested a game of contacting and scaring the witnesses. Others received disturbing letters and were harassed by the public and media. The court also noted the intense media attention generated by the case, with various trial participants reporting extensive and unwanted contacts from the press.

no doubt, be other high-profile criminal trials that share a few of this case's more unusual elements, it is highly unlikely that any will substantially mirror the circumstances presented here. Even if Kaczynski were to succeed in setting aside his guilty plea and obtain a new trial, any closure order would in all likelihood raise a different set of issues. Not only has the information sought by Media become public since Kaczynski's guilty plea, he would likely mount a completely different defense-after all, his pending 28 U.S.C. § 2255 motion alleges that he was coerced into pleading guilty because of his profound dissatisfaction with the mental status defense that his lawyers would have allegedly forced on him at trial. *See* Combined Verified *Pro Se* Motion Under 28 U.S.C. § 2255, *Kaczynski v. United States* at 96–109 (filed Apr. 23, 1999) (D.C. No. CVS–99–816–GEB–JFM–P). As for voir dire matters, if Kaczynski or the government were again to move to impanel a partially anonymous jury, they would have to offer up new evidence that the case still stirred up "deep passions" despite the passage of time. *Cf. Branch*, 91 F.3d at 724. Also significant is the fact that Kaczynski has filed his section 2255 motion pro se, which suggests that he may continue to represent himself in the future, adding a degree of almost unimaginable unpredictability to any new trial.

Even if the circumstances of this case were capable of repetition, the harm suffered by Media is unlikely to evade review. The relevant pretrial proceedings lasted several months, giving Media ample opportunity to seek, and obtain, an expedited appellate ruling before Kaczynski pled guilty in late January 1998. Media's counsel conceded at oral argument that petitioners could have, but did not, immediately move for expedited review before this court. Instead, Media waited several weeks after the district court entered the offending orders to file its petition, in part because they projected the trial to stretch over a four- to six-month period. Their delay ended up consuming valuable time. Petitioners' attorney acknowledged this at oral argument and indicated that her client will immediately seek expedited review the next time there is a high-profile case like Kaczynski's. Thus, we cannot say that the orders challenged here were "in [their] duration too short to be fully litigated prior to [their] cessation or expiration." *Weinstein*, 423 U.S. at 149, 96 S.Ct. 347.

As we have determined that Media's petition does not present issues that fall within the exception to mootness for questions that are capable of repetition but will evade review, the petition for a writ of mandamus is **DISMISSED**.