Jerome H. BRUDOS, Petitioner—
Appellant,

v.

Joan PALMATEER, Defendant—
Appellee.

No. 01–35846.

D.C. No. CV–99–01058–AA.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2002.

Decided Aug. 2, 2002.

Before FERGUSON, W. FLETCHER, Circuit Judges, and KING,* District Judge.

## MEMORANDUM **

Jerome Brudos pled guilty to three counts of murder in Marion County, Oregon, and received three consecutive life sentences. At the time of his plea, a life sentence allowed for the possibility of parole. Brudos' biennial parole hearings were terminated in 1995, and he began receiving biennial consideration for a parole hearing in 1996. Brudos filed a petition for writ of habeas corpus, claiming that the Oregon Board of Parole and Post–Prison Supervision's ("Parole Board's") decision to convert his parole hearings violated his due process rights. We affirm the district court's decision to dismiss the petition.

* The Honorable George H. King, United States District Judge for the Central District of California, sitting by designation.

## I. Facts and Prior Proceedings

In 1969, when Brudos pled guilty, former Or.Rev.Stat. § 144.240 (repealed 1973) provided:

> No prisoner in the state penitentiary shall be paroled unless it is the opinion of the [Oregon Board of Parole and Post–Prison Supervision] that, within a reasonable probability, the prisoner will, after parole, remain outside the institution without violating the law and that such release is not incompatible with the welfare of society.

The Parole Board was required to bring "before it all information regarding such convicted person" within six months of incarceration, and after that from "time to time." Former Or.Rev.Stat. § 144.220 (repealed 1975).

In 1975, Or.Rev.Stat. § 144.220 was repealed and replaced by former Or.Rev. Stat. § 144.221 (repealed 1977). The latter statute, made retroactive to previously convicted persons like Brudos, provided in relevant part:

> In order to more accurately assess the status of a convicted person, the State Board of Parole ... shall personally interview each convicted person at least once every two years after his admission to a state penal or correctional institution until expiration of the convicted person's term of imprisonment. The interview shall not be characterized as a parole hearing and shall not be subject to parole hearing procedure.

Or.Rev.Stat. § 144.221(2).

In 1979, Brudos began receiving biennial parole hearings. On June 21, 1995, the Parole Board issued an order denying Brudos parole and proclaiming, "There will

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

be no further parole hearings." Brudos petitioned the Oregon Court of Appeals for judicial review of that order. After Brudos filed his brief in that proceeding, the Parole Board withdrew its order. On July 11, 1996, the Parole Board issued another order with respect to Brudos, stating:

This review is to consider and clarify the statement in board action form #8, (06/21/1995) in which it states there will be no further hearings. The rules in effect at the time of your crimes require the board to have you examined mentally and physically every two years, to review those reports and a report from the department of corrections, and determine if you should be considered for parole. Only if the board decides there is reason to believe you should be paroled, would a hearing be scheduled.

Brudos filed an amended petition for review of this order. The Court of Appeals granted the Parole Board's motion to dismiss on the ground that the July 11, 1996 order was non-reviewable.

On August 5, 1996, Brudos filed a petition for state post-conviction relief contending that his convictions were wrongfully obtained in violation of his due process rights. He claimed that his trial counsel had advised him that he would be eligible for parole after ten years, and that his guilty plea was not knowing, intelligent, and voluntary because he "was unaware of the non-parolability of his sentence prior to the entry of his guilty plea." The state moved to dismiss on state procedural grounds. The Marion County Circuit Court granted the state's motion, and the Court of Appeals affirmed the judgment without opinion. *See Brudos v. Thompson*, 153 Or.App. 702, 957 P.2d 1230 (1998). The Oregon Supreme Court subsequently denied review. *See Brudos v. Thompson*, 327 Or. 305, 966 P.2d 219 (1998).

On December 7, 1999, Brudos filed in federal district court the amended petition for writ of habeas corpus that is presently before us ("Amended Petition"). Brudos contends in the Amended Petition that he was denied his right to due process when:

in July 1995, the Oregon Parole Board decided that Petitioner would not receive any additional parole hearings. The Board took this action even though the relevant parole law in existence at the time of Petitioner's crime provided for periodic hearings by the Oregon Parole Board. The Board's action unlawfully converted Petitioners [sic] ordinary life sentences into life-without-parole sentences.

The state filed a motion to dismiss before the district court, arguing that the Parole Board's decision to grant biennial parole consideration rendered Brudos' claim moot. The district court agreed and granted the motion. The court also stated that even if the claim were not moot, Brudos' due process claim lacked merit because the statute in effect at the time Brudos was sentenced required only a review of his administrative file and a personal interview, both of which are provided by the biennial parole consideration. Brudos timely appealed.

## II. Discussion

### A. Mootness

■ Brudos alleges in his Amended Petition that the Parole Board's 1995 order "unlawfully converted his life sentences into life-without-parole sentences." The district court found that because the Parole Board rescinded its 1995 order and instated biennial parole consideration, "[Brudos'] sentence has not been altered to life without the possibility of parole," and his claim was therefore moot. We disagree.

The case-or-controversy requirement of Article III, § 2, of the Constitution requires that " 'the parties ... continue to have a personal stake in the outcome of

the lawsuit.'" *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)) (internal quotation marks omitted). "A case is moot only if interim events have 'completely and irrevocably eradicated the effects of' an allegedly improper ruling." *In re Pintlar Corp.*, 124 F.3d 1310, 1312 (9th Cir.1997) (quoting *Wong v. Dept. of State*, 789 F.2d 1380, 1384 (9th Cir.1986)).

The Parole Board's 1995 order in Brudos' case changed the procedure for considering Brudos' parole from providing full parole hearings to no consideration of parole eligibility. The 1996 "clarifying" order did not reinstate the former scale of consideration; rather it provided for a less formal process that *may,* depending on its results, allow for full parole hearings. The state does not dispute that in spite of the 1996 order, Brudos now receives less elaborate consideration for parole than he did before the 1995 order. Thus, interim events have not "completely and irrevocably eradicated the effects of" the allegedly improper Parole Board order.

The Ninth Circuit stated in *In re Pintlar* that "[t]he party asserting mootness has a heavy burden to establish that there is *no* effective relief remaining for a court to provide." *In re Pintlar*, 124 F.3d at 1312 (emphasis added). Brudos would attain greater relief than what the Parole Board has provided if we were to conclude that Brudos possesses a liberty interest in full parole hearings and order reinstatement of the full parole hearings. For these reasons, we hold that Brudos' claim is not moot.

B.  Due Process Claim

■ Brudos argues that because he pled guilty with the expectation of receiving biennial parole hearings, the 1995 order unconstitutionally deprived him of a liberty interest in those hearings and the 1996 "clarifying" order establishing the lesser parole review "did not fully cure the constitutional violation." The state claims that Brudos failed to present this due process claim to the state courts, and thus has failed to exhaust his state remedies. Regardless of whether Brudos exhausted his state remedies, we may deny his petition on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The actual statute in place at the time Brudos pled guilty was former Or.Rev. Stat. § 144.220 (repealed 1975), which only required that the Parole Board solicit "all information regarding such convicted person" from "time to time." Former Or.Rev. Stat. § 144.221 (repealed 1977), which replaced Or.Rev.Stat. § 144.220 in 1975 and was retroactively applied to Brudos, mandated only a personal interview every two years, and specifically stated that the interview "shall not be characterized as a parole hearing." We note that neither statute required a full parole hearing. Consequently we believe the biennial parole consideration provided by the 1996 "clarifying" order, entailing a biennial "mental[ ] and physical[ ]" examination and review of a report from the Department of Corrections, satisfies both statutes.

Since the Parole Board's 1996 order, Brudos has been considered for parole on the basis of a "personal interview" and "a full review of the boards file [sic] and the institution file." The Supreme Court has held that such a procedure for denying parole satisfies due process requirements. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 14, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (holding that due process does not require "repeated, adversary hearings in order to continue the confine-

ment"). Brudos does not cite to any authority supporting the proposition that changing from one constitutionally permissible parole review method to another constitutionally permissible parole review method violates a prisoner's right to due process. There is also nothing in the record describing the exact nature or structure of the parole hearings Brudos received before 1996. Brudos has thus failed to show any material difference between his current parole review method and the former parole hearings. Without showing what he has allegedly lost in the transition to the current parole review method, Brudos cannot establish the constitutional significance of that alleged loss.

We hold, therefore, that the current form of parole consideration satisfies Brudos' rights to due process.

AFFIRMED.

* This disposition is not appropriate for publication and may not be cited to or by the courts