**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-1687**

LAWRENCE D'ADDARIO, suing individually and on
behalf of all others similarly situated, and
derivatively on behalf of RMS Titanic, Inc.,

Plaintiff - Appellant,

versus

ARNIE GELLER; JOE MARSH; GERALD COUTURE; RMS
TITANIC, INCORPORATED,

Defendants - Appellees,

and

G. MICHAEL HARRIS; NICK N. CRETAN; DOUG
BANKER,

Defendants,

versus

ALLAN H. CARLIN,

Party in Interest.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Rebecca Beach Smith, District
Judge.  (CA-02-250)

Argued: December 1, 2004          Decided: February 24, 2005

Before NIEMEYER and MICHAEL, Circuit Judges, and Norman K. MOON,
United States District Judge for the Western District of Virginia,
sitting by designation.

———————

Affirmed in part, vacated in part, reversed in part, and remanded by unpublished per curiam opinion.

———————

**ARGUED:** Steven Gary Storch, STORCH, AMINI & MUNVES, P.C., New York, New York, for Appellant.  Robert William McFarland, MCGUIREWOODS, L.L.P., Norfolk, Virginia, for Appellees.  **ON BRIEF:**  John D. Padgett, MCGUIREWOODS, L.L.P., Norfolk, Virginia; William H. Baxter, II, MCGUIREWOODS, L.L.P., Richmond, Virginia, for Appellees Arnie Geller and Gerald Couture.  Megan E. Burns, WILLIAMS MULLEN, P.C., Virginia Beach, Virginia, for Appellee Joe Marsh.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Lawrence D'Addario sued the officers, directors, and controlling shareholder of RMS Titanic, Inc. (RMST), a Florida corporation, alleging that the defendants engaged in fraud, self-dealing, mismanagement, diversion, and waste of corporate assets. D'Addario sought class certification for one of his claims (the shareholder rights claim), which the district court denied. The court then dismissed the shareholder rights claim on the ground that D'Addario lacked standing to bring it. After extensive discovery the court awarded summary judgment to the defendants on the remaining claims. D'Addario appeals the district court's order dismissing the shareholder rights claim and denying class certification. He also appeals various discovery rulings and the award of summary judgment to the defendants. We affirm the district court's orders and discovery rulings with two exceptions. We (1) vacate the district court's order granting summary judgment to defendants Arnie Geller and Gerald Couture on D'Addario's fiduciary duty claims and (2) reverse the district court's discovery ruling denying D'Addario access to documents and materials submitted by RMST to the Securities and Exchange Commission (SEC).

In August 1987 D'Addario invested $500,000 and became a limited partner in Titanic Ventures Limited Partnership (TVLP), a commercial enterprise formed to explore the sunken vessel, The Titanic. In 1993 TVLP and RMST entered into a reverse merger. Pursuant to this merger RMST acquired all of the assets of TVLP, and TVLP became a shareholder of RMST, holding several million shares of the company.

In November 1999 Arnie Geller and G. Michael Harris (two directors of RMST) and Joe Marsh (the single largest shareholder of RMST) obtained control of RMST through a hostile takeover. After the takeover Geller was named President, CEO, and Treasurer; he remained a director. Harris was named Executive Vice President, COO, and Secretary; he also remained a director. Gerald Couture, who apparently had no role in the takeover, was named Vice-President, CFO, and a director of RMST. Sometime after the takeover TVLP was dissolved and its RMST shares were distributed to the partners of TVLP, including D'Addario. It is unclear on what date TVLP was officially dissolved, but it was apparently on or after March 13, 2000, as this was the date that D'Addario signed off on the dissolution. On August 14, 2000, D'Addario received from TVLP a distribution of 784,088 RMST shares.

On April 15, 2002, D'Addario filed suit against Marsh, Geller, Couture, Harris, and two other members of RMST's board of

directors.  Though D'Addario originally brought a number of claims against a number of different defendants, it appears that D'Addario is now pursuing only three types of claims against three defendants, Geller, Couture, and Marsh.  First, D'Addario asserts claims alleging that Geller and Couture breached their fiduciary duties as directors and officers (the fiduciary duty claims).  Second, he alleges that Geller and Marsh violated the Racketeer Influenced and Corrupt Organizations Act (the RICO claim).  D'Addario brings the fiduciary duty claims and the RICO claim as derivative ones on behalf of RMST.  Third, he alleges that Geller and Marsh violated RMST shareholders' rights when they gained control of RMST pursuant to the hostile takeover (the shareholder rights claim).  D'Addario brings this last claim individually and purportedly on behalf of a class.

In December 2003 the three defendants (Geller, Couture, and Marsh) moved for summary judgment on the fiduciary duty claims and the RICO claim.  On December 19, 2003, while the motions for summary judgment were pending, the district court denied class certification on the shareholder rights claim and dismissed the claim on the basis that D'Addario lacked standing to bring it.  On April 23, 2004, the district court awarded summary judgment to the defendants on the fiduciary duty claims and the RICO claim.  D'Addario appeals the award of summary judgment to the defendants,

the denial of class certification on the shareholder rights claim as well as its dismissal, and various discovery rulings.

II.

We turn first to the district court's award of summary judgment to the defendants on the fiduciary duty and RICO claims. We review a district court's award of summary judgment de novo, and in doing so we "view the facts and draw reasonable inferences in a light most favorable to the non-moving party." Stroud v. Shaw, 13 F.3d 791, 798 (4th Cir. 1994) (citation omitted). Summary judgment may only be awarded when the evidence proffered "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.

According to D'Addario, he has proffered evidence that Geller and Couture breached their fiduciary duties to RMST in several ways, by, for example, managing RMST in an incompetent fashion, engaging in sham transactions with third parties at the expense of RMST, and engaging in transactions that involved conflicts of interest. D'Addario therefore argues that the district court erred in granting summary judgment on the fiduciary duty claims. Under Florida law (which applies here) a plaintiff must prove three elements to make out a claim for breach of fiduciary duty: (1) the

6

existence of a fiduciary duty, (2) a breach of that duty, and (3) a causal connection between the breach and the plaintiff's injuries. See Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002). To satisfy his or her fiduciary duty to a corporation, "[a] director shall discharge his or her duties . . . [i]n good faith . . . with the care an ordinarily prudent person in a like position would exercise under similar circumstances and . . . in a manner he or she reasonably believes to be in the best interests of the corporation." Fla. Stat. Ann. § 607.0830(1). Further, a director is personally liable for monetary damages to the corporation when his breach of fiduciary duty involves willful misconduct, a conscious disregard of the corporation's best interests, or the receipt of an improper benefit. See id. § 607.0831(1)(b)(2), (b)(4).

The district court determined that Geller and Couture, as officers and directors of RMST, owed fiduciary duties to the company. However, the court concluded that D'Addario failed to proffer any evidence to support a finding that Geller and Couture breached their fiduciary duties to RMST or that, if they did breach their duties, the breaches proximately caused damages to D'Addario. The district court erred because D'Addario did submit evidence that Geller and Couture breached their duties. For example, D'Addario pointed to testimony of Harris (another director at RMST) that Geller engaged in a kickback scheme at the expense of RMST with a

7

man named Graham Jessop and his solely owned company, Argosy International, Ltd. (Argosy). See J.A. 3210. Argosy received from RMST 600,000 shares of RMST stock (valued at $900,000) in exchange for several treasure maps. RMST purchased the maps at Geller's request, and Geller did not have the maps appraised prior to the purchase. See J.A. 4300-04. The maps were later discovered to be worthless, and Harris testified that the whole transaction was a scam. According to Harris, Geller offered to divide up the 600,000 shares three ways between Geller, Harris, and Jessop, using "dummy" corporations. See J.A. 3210. Harris refused to engage in the scheme and eventually left RMST.

D'Addario also proffered evidence of a questionable transaction in which the board of directors of RMST, at Geller's request, unwound the treasure map transaction with Argosy and entered into a substitute transaction with Argosy. Some time after the worthless treasure map deal, Argosy and RMST returned the 600,000 RMST shares for the treasure maps. The purported reason for the unwinding was that RMST lacked the financial wherewithal to pursue the opportunities presented in the maps. See J.A. 4109-11. Rather than just rescinding the transaction, however, RMST and Argosy entered into a new transaction in which RMST purchased from Argosy the rights to the Carpathia, another sunken vessel, by issuing 1,704,545 common shares of RMST (valued at $750,000). See J.A. 3230. Geller told RMST's board (which included Couture at the

8

time) that, based on an independent appraisal, the value of the Carpathia rights was $4.5 million. See J.A. 3230. However, an examination of the appraisal reveals that it relied heavily (if not completely) on the value of the contents of the Carpathia. See J.A. 3233-34. There is an issue as to whether the rights Argosy sold to RMST included the rights to the contents of the Carpathia because it did not even include the rights to any cargo. See J.A. 2660, 3227. Indeed, Argosy had purchased the rights a year earlier for only five hundred pounds from the Secretary of State for the Environment in England. D'Addario also proffered evidence of other transactions by Geller and Couture that could constitute breaches of fiduciary duties, such as having RMST do business with a corporation in which Geller was a fifty percent owner, see J.A. 4007-13, approving seemingly exorbitant salaries and bonuses for themselves (for example, Couture approved, with little or no investigation, a $400,000 payment to Geller as back pay), see J.A. 2692-94, 4032-37, and engaging in another imprudent (and financially detrimental) transaction with Argosy, specifically, by having RMST sell one of its vessels to Argosy in exchange for a promissory note and a relatively small down payment, see J.A. 3551-52. This evidence is sufficient to create a genuine issue of material fact as to whether Geller and Couture breached their fiduciary duties to RMST.

9

The district court also concluded that D'Addario could not establish that he was damaged by the alleged breaches because he failed to introduce any evidence that the decrease in value of his RMST stock was due to Geller's and Couture's breaches of their fiduciary duties. The court erred because D'Addario brought the fiduciary duty claims as derivative claims on behalf of RMST, and he specifically sought damages for injuries sustained by the company. The issue is not whether Geller's and Couture's breaches caused damages to D'Addario but rather whether their breaches caused damage to RMST. See Citizens Nat'l Bank of St. Petersburg v. Peters, 175 So. 2d 54, 56 (Fla. Dist. Ct. App. 1965) (noting that in a derivative action "the injury is primarily against the corporation, or the shareholders generally [and that] the cause of action is in the corporation and the individual's right to bring it is derived from the corporation."). D'Addario has proffered evidence that the breaches by Geller and Couture caused monetary losses to RMST. For example, if the Carpathia deal constitutes a breach of fiduciary duty, then the breach surely damaged the company: Geller and Couture arranged for RMST to exchange $750,000 worth of shares for what appear, at the summary judgment stage, to be worthless rights. In sum, it was error for the district court to award summary judgment to Geller and Couture on the breach of fiduciary duty claims on the ground that D'Addario had not

proffered evidence that these two defendants breached their duties or that the breaches caused damage.

Geller and Couture argue that they are entitled to summary judgment because D'Addario presented no expert testimony establishing that their conduct amounted to breaches of their fiduciary duties or that their conduct caused damages to D'Addario. They rely heavily on Florida law for the proposition that "questions of proximate cause and damages present complex questions of law and fact that cannot be resolved strictly through lay witnesses." Br. for Appellees at 38. A review of the authority cited by Geller and Couture, however, reveals no such requirement under Florida law. Although experts may be needed in complicated cases, in the present case it should not be unduly difficult to determine whether or not the defendants' actions constitute breaches of their fiduciary duties or whether any breaches caused damage to RMST. For example, expert testimony is not essential to establish that a kickback scheme engaged in by a director at the expense of the corporation constitutes a breach of the director's fiduciary duties. Nor is expert testimony needed to determine the amount of damages suffered if $750,000 worth of stock is wrongfully exchanged for essentially worthless rights.

D'Addario also argues that the district court abused its discretion in refusing to allow further time for the gathering of additional evidence pursuant to Fed. R. Civ. P. 56(f) and in

11

refusing to allow him to submit belated expert reports. According to D'Addario, this evidence would have further buttressed his fiduciary duty claims and provided further grounds for reversing the district court's award of summary judgment on the fiduciary duty claims. We need not address these arguments because we vacate on other grounds the district court's award of summary judgment against D'Addario on his fiduciary duty claims.

## B.

D'Addario next argues that the district court erred in awarding summary judgment to Geller and Marsh on his RICO claim (this claim was not brought against Couture). D'Addario alleges that Geller and Marsh engaged in a pattern of racketeering in violation of the RICO Act, 18 U.S.C. § 1962. As predicate acts for his RICO claim, he alleges that Geller and Marsh engaged in mail fraud and that Geller engaged in obstruction of justice. The district court dismissed the RICO claim because (1) D'Addario failed to allege the requisite specificity for a claim of mail fraud under 18 U.S.C. § 1341, and (2) assuming D'Addario could establish that Geller engaged in obstruction of justice, D'Addario offered no evidence that the predicate acts caused harm to RMST.

On appeal D'Addario does not dispute the district court's reasoning but rather argues that the entry of judgment against him was error due to the district court's denial of two discovery requests. D'Addario claims the discovery he sought would have

provided him with evidence to support his RICO claim. D'Addario first claims that the district court abused its discretion in refusing to allow him access to RMST's artifacts. Access to the artifacts was necessary to establish the RICO claim, D'Addario asserts, because there is an issue as to whether the defendants' illegal conduct is exposing RMST to financial risk, which in turn could affect the company's ability to care for the artifacts. Because of the minimal relevance, if any, of the condition of the artifacts to the claims of mail fraud and obstruction of justice, the district court's denial of this discovery request was not an abuse of discretion.

D'Addario also claims that the district court abused its discretion in refusing to compel the defendants to produce corporate telephone records that would have supposedly aided him in establishing wire fraud, an alternative predicate act for his RICO claim. D'Addario sought telephone records of "any and all phone numbers which RMST entirely or partially maintains, pays for, reimburses, or which are otherwise used by any RMST officer, director, employee, and/or consultant from September 1999 through the present." J.A. 231. The district court denied D'Addario's request because it was too broad and because the fact that telephone calls were made is insufficient by itself to establish wire fraud. We have considered the district court's reasoning, and

13

we conclude that the denial of this request was not an abuse of discretion.

## III.

D'Addario next argues that the district court erred by refusing to compel Geller and Couture to produce (on behalf of RMST) documents and materials that RMST had submitted to the SEC in a separate investigation.  The district court found, and Geller and Couture now argue, that there exists a privilege (an SEC privilege) as to documents that are involuntarily submitted to the SEC in response to an investigative subpoena.

The district court erred because there is no such thing as an SEC privilege.  Geller and Couture cite to In re Steinhardt Partners, L.P., 9 F.3d 230 (2nd Cir. 1993), In re Subpoenas Duces Tecum, 738 F.2d 1367 (D.C. Cir. 1984), and 17 C.F.R. § 203.2 (2004) to support their argument for this privilege.  These sources do not establish or support an independent SEC privilege.  The two cited cases deal with the attorney-client and work product privileges and examine only whether a party's disclosure of privileged documents in connection with an SEC investigation waives any privilege in later civil proceedings initiated by private litigants.  See In re Steinhardt, 9 F.3d at 233; In re Subpoenas, 738 F.2d at 1369.  Geller and Couture do not argue that the documents RMST submitted to the SEC are subject to the attorney-client or work product

14

privilege, and there is no evidence that they established the necessary elements to claim either privilege. Further, the regulation cited by Geller and Couture, 17 C.F.R. § 203.2, provides only that information and documents obtained by the SEC in the course of an investigation are deemed non-public. The regulation does not provide that documents and materials submitted to the SEC are not discoverable in a later civil proceeding. Because there is no SEC privilege, the district court erred in refusing to compel discovery of the documents and materials submitted by RMST to the SEC.

IV.

D'Addario finally argues that the district court erred in refusing to grant class certification for his shareholder rights claim and that the district court erred in ultimately dismissing the claim because D'Addario lacked standing. D'Addario alleges that Geller and Marsh violated the rights of RMST shareholders by failing to comply with Fla. Stat. Ann. § 607.0902 during their hostile takeover of RMST in November 1999. D'Addario alleges Couture is liable for this violation because he "ratified this wrong." J.A. 55. Section 607.0902 requires a majority of disinterested shareholders having voting rights to grant approval of a hostile takeover in which a shareholder acquires a controlling interest in the corporation. See Fla. Stat. Ann. § 607.0902(9).

15

As written at the time, § 607.0902 granted dissenters' rights to all shareholders; these rights permitted shareholders, at their option, to sell their shares back to the corporation at a fair value. See id. § 607.0902(11) (repealed 2003). D'Addario asserts that the defendants "prevented [D'Addario] and the class members from voting [RMST] shares at the time of the takeover . . . and from obtaining dissenters' rights at a time when RMST was profitable." J.A. 56. D'Addario requested class certification for this claim, purporting to represent "all persons who were shareholders in November, 1999 just prior to the acquisition of majority shareholder control by the takeover defendants and their group and entitled to voting and dissenters' rights under Florida Statute 607.0902." J.A. 56.

We agree with the district court that D'Addario does not have standing to bring the shareholder rights claim and that he is not a member of the class he purports to represent. As to the standing issue, "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) (citations omitted). Phrased differently, the plaintiff "must have a personal stake in the outcome of the lawsuit." Id. at 478 (internal quotation marks and citations omitted). In the present case the injury D'Addario claims is a

16

deprivation of voting and dissenters' rights associated with RMST stock.  The problem is that D'Addario was not deprived of voting or dissenters' rights by the defendants' action because D'Addario did not have these rights at the time of the hostile takeover. D'Addario did not even own RMST stock during the relevant time, as the takeover took place in November 1999, and he did not become a shareholder of RMST until August 2000.  TVLP, a limited partnership in which D'Addario was a limited partner, was the record owner of the RMST shares at the time of the takeover, and it was TVLP that would have been deprived of voting and dissenters' rights.  Because D'Addario himself was not deprived of any rights, he did not suffer "an actual injury traceable to the defendant[s]" and has no standing to bring the shareholder rights claim.  Id. at 477.

D'Addario argues that he was in fact a shareholder entitled to voting and dissenters' rights because he was the beneficial owner of the shares held by TVLP prior to the transfer.  Under Florida law a shareholder is one who is either  "a holder of record" or "the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation."  Fla. Stat. Ann. § 607.01401(24).  D'Addario argues that he was the beneficial owner of the RMST shares and that the TVLP limited partnership agreement, which was on file with RMST, should be considered a nominee certificate on file with the corporation.  On this reasoning D'Addario asserts that he was a shareholder under

17

§ 607.01401(24) and that he was entitled to voting and dissenters' rights on the date of the takeover under § 607.0902.

The flaw in D'Addario's argument is that even if he is considered a beneficial owner of the RMST shares owned by TVLP on the takeover date, he is only considered a shareholder "to the extent of the rights granted by [the] nominee certificate on file" with RMST. Id. § 607.01401(24). Section 607.01401(24) provides that a beneficial owner's rights as a shareholder are limited to only those that are listed in the nominee certificate on file with the corporation. TVLP's limited partnership agreement, which D'Addario asserts was in fact a nominee certificate, provided that the general partners of the partnership had the power "[t]o purchase, lease, develop, improve, maintain, exchange, trade, or sell all or part of the Partnership assets at such price, rental or amount for cash, security or other property, and upon such terms as the General Partners in their sole, absolute and uncontrolled discretion shall deem to be in the best interest of the Partnership." J.A. 667-68. Notably absent from the agreement is any clause granting limited partners of TVLP, such as D'Addario, any rights as to the RMST shares held by TVLP, let alone the more specific voting and dissenters' rights. The right to exercise dissenters' rights and thereby liquidate TVLP's shares of RMST stock was clearly vested in TVLP as the record owner and, through the limited partnership agreement, in the general partners of TVLP.

18

Even if D'Addario was a beneficial owner of the RMST shares he was not entitled to voting or dissenters' rights because the TVLP partnership agreement did not grant him such rights. And because he was not entitled to voting and dissenters' rights, D'Addario is not a member of the class he purports to represent, namely shareholders of RMST who were "entitled to voting and dissenters' right under Florida Statute 607.0902." J.A. 56.

V.

With the exception of one claim, we affirm the district court's order awarding summary judgment to Geller, Couture, and Marsh. We vacate the summary judgment to the extent that it disposed of D'Addario's breach of fiduciary duty claims against Geller and Couture. We also affirm the district court's discovery rulings except for the ruling that D'Addario is not entitled to documents and materials submitted by RMST to the SEC. The documents and materials were not privileged, and we therefore reverse the district court's ruling that denied discovery of these items. Finally, we affirm the district court's order denying class certification on D'Addario's shareholder rights claim and dismissing the claim. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART,
REVERSED IN PART, AND REMANDED

19