John. B. MCCORMICK, Ed Benesch, Bennie Jackson, et al., Plaintiffs–Appellees,

v.

Gerald ZERO, Defendant–Appellant.

No. 00–3263.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 2000.

Decided March 2, 2001.

Before FAIRCHILD, EASTERBROOK, and MANION, Circuit Judges.

ORDER

The plaintiffs, four elected officers of Local 705 of the Teamsters Union, were allegedly denied their full salaries and access to their offices by Gerald Zero, Local 705's Principal Executive Officer, because of the plaintiffs' opposition to Zero's policies. The plaintiffs sought a temporary restraining order (TRO) and a preliminary injunction requiring Zero to restore their full salaries and access to their offices so that they could fulfill their duties as Union

officers. The district court granted a TRO and then a preliminary injunction, finding that Zero excluded the officers in violation of the Labor Management Reporting and Disclosure Act (LMRDA). The court also found that the excluded officers would suffer irreparable injury if they were not restored to their full salaries and office privileges, especially with Union elections pending. Zero appealed, arguing that the district court erred in granting the preliminary injunction. While Zero's interlocutory appeal was pending in this court, Union elections were held; Zero was reelected and all of the plaintiffs were defeated. After the election, the district court issued an order dismissing the case as moot. We thus dismiss this interlocutory appeal as moot.

## I.

Plaintiffs John McCormick, Ed Benesch, Bennie Jackson, and Steven Pocztowski were elected officers of Local 705 of the International Brotherhood of Teamsters ("Local 705" or "the Union"). Local 705 represents members who work at United Parcel Service. Defendant Gerald Zero is the Secretary–Treasurer and Principal Executive Officer of Local 705, and, pursuant to the Union constitution, has the power to fire appointed employees of the Union. But the constitution does not empower Zero to interfere with the basic duties of Local 705's elected officers.

The material events of this case began with Local 705's 1997 elections, when the plaintiffs and Zero campaigned together on a common slate and were elected to three-year terms as Union officers. But the relationship between the plaintiffs and Zero deteriorated sharply over differences about Union policies and alleged misconduct by Zero. Eventually, on April 17,

2000, Zero purportedly fired the plaintiffs from their appointed (employee) positions as Business Agents of the Union, directed the plaintiffs to turn in their office keys, parking passes, and all of their Union files, and reduced plaintiffs' salaries to a stipend of $15,000.00 a year.[1] According to Zero, the plaintiffs held positions as Business Agents in addition to their positions as Union officers and received most of their salary for their work as Business Agents. Zero also asserted that the plaintiffs still had to continue to fulfill their fiduciary duties as Union officers even though they had been fired from their Business Agent positions, thus the $15,000 salary.

On May 5, 2000, the plaintiffs sued Zero in federal court, seeking a TRO and a preliminary injunction that required Zero to restore the plaintiffs to their offices and full salaries. According to the plaintiffs, they only held elected officer positions (not appointed positions as Business Agents), and no evidence supports Zero's claim that most of the plaintiffs' salaries was based on their alleged work as Business Agents. The plaintiffs also argued that Zero's actions impeded their ability to fulfill their duties as Union officers as well as their ability to campaign for reelection in the upcoming November elections, in violation of the free speech and equal treatment provisions of the LMRDA, 29 U.S.C. § 401 et seq.

The district court entered a TRO on May 18, 2000, ordering Zero to restore the plaintiffs to their offices and full salaries. The district court then extended the TRO until it could hold a preliminary injunction hearing in June. On August 23, 2000, following the June hearing, the court issued a preliminary injunction that contained provisions similar to the TRO. Zero moved for an expedited appeal with this court, arguing that the district court erred in grant-

---

1. The plaintiffs' full salaries ranged from $77,000 to $93,000 a year.

ing the preliminary injunction. This court granted Zero's motion for an expedited appeal, and heard oral arguments on November 9.

While Zero's interlocutory appeal was pending with this court, Local 705 held elections. On December 6, 2000, the Independent Election Officer for Local 705 certified the results of the election in which Zero was reelected as Secretary–Treasurer and Principal Executive Officer of Local 705, and all of the plaintiffs were defeated.

On December 29, 2000, the district court issued an order dismissing the case as moot, stating that the parties had agreed that the election results have resolved all substantive aspects of this litigation except for two outstanding matters that, according to the district court, do not affect the appropriateness of dismissing the case as moot: 1) the ongoing criminal contempt proceedings against Zero; and 2) the anticipated claim for attorney's fees to be filed on behalf of the plaintiffs. (However, the parties failed to notify this court of the district court's decision until February 23, 2000, when they filed their required responses to this court's order for supplemental memoranda on whether the case was moot.) The district court then proceeded to determine the plaintiffs' entitlement to attorney's fees; but Zero requested the district court to defer that determination until this appeal was decided, claiming that the disposition of this appeal could affect the plaintiffs' entitlement to fees. The district court rejected Zero's request and set a schedule to consider the fee issue.

## II.

First of all, we emphasize that the parties failed in their duty to inform this court *"without delay"* of the district court's dismissal of the case as moot. *Weicherding v. Riegel,* 160 F.3d 1139, 1142 (7th Cir.

1998) (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 23, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (emphasis in original)).

■ "The United States Constitution limits this Court's jurisdiction to live cases and controversies." *Stotts v. Community Unit School Dist. No. 1,* 230 F.3d 989, 990 (7th Cir.2000); *see* U.S. CONST. art. III, § 2. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). "If a case becomes moot while on appeal, this court loses its jurisdiction to decide the merits of the action." *Bd. of Educ. v. Nathan R.,* 199 F.3d 377, 380–81 (7th Cir.2000).

■ Zero's interlocutory appeal lacks a live controversy. All of the plaintiffs lost their Union offices in the last election, and thus they are no longer entitled to the salaries and office privileges that were restored to them by the district court's preliminary injunction. Therefore, Zero no longer has an interest in reversing the preliminary injunction. Clearly, our decision on Zero's appeal "would have no practical impact on the parties," and thus it is moot. *Stotts,* 230 F.3d at 991.

Zero argues that this appeal is not moot because the plaintiffs' "entitlement to fees and costs cannot be resolved without a ruling on the merits of the appeal." But we lack jurisdiction to consider the merits of this appeal, and thus we cannot address the merits to determine if a party is entitled to attorneys' fees. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990); *see also Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988); *Nathan R.,* 199 F.3d at 381. Therefore, the judgment of the district court is VACATED

and we REMAND the case for the district court to dismiss the case as moot. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Nathan R.,* 199 F.3d at 381.