CLD-127                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3834
_____

DAMON JONES,
                                        Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; SUPERINTENDENT GRATERFORD
SCI; JAY LANE, DEPUTY SUPERINTENDENT; BOLTON,
UNIT MANAGER; KELLY, UNIT COUNSELOR;
FRANCIS J. FEILD, MAJOR; ROBIN M. LEWIS; JOHN
DOE; JANE DOE; DISTRICT ATTORNEY PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 12-cv-03365)
District Judge: Honorable Joel H. Slomsky
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
December 12, 2013

Before:  FUENTES, JORDAN and SHWARTZ, Circuit Judges

(Opinion filed: December 17, 2013)
_____

OPINION
_____

PER CURIAM

Appellant Damon Jones appeals from an order of the District Court dismissing his amended complaint. For the reasons that follow, we will dismiss the appeal in part as moot and, in all other respects, dismiss it as frivolous.

Jones, a state prisoner, was convicted in the Philadelphia County Court of Common Pleas of two counts of first-degree murder in May, 1983. In 1987, he was sentenced to death on both counts. On direct appeal, the Pennsylvania Supreme Court affirmed both the verdict and sentence, see Commw. v. Jones, 610 A.2d 931 (Pa. 1992). As a result of the death sentences, Jones was moved to the state correctional institution's Capital Case Unit ("CCU"), and thereafter was confined as a capital-case inmate within the Restricted Housing Unit. After filing a state post-conviction petition, Jones was granted a new penalty hearing on August 3, 2007. On December 14, 2012, the state trial court resentenced Jones to two terms of life in prison, the sentences to run consecutive to another life sentence Jones was serving on a separate first-degree murder conviction. At the resentencing, the trial judge ordered that Jones be removed from death row. Jones was transferred into the general population on or about January 17, 2013.

Prior to his transfer off death row, in June, 2012, Jones filed the instant in forma pauperis civil rights action, 42 U.S.C. §§ 1983 and 1985(3), in the United States District Court for the Eastern District of Pennsylvania, against the District of Attorney of Philadelphia and numerous state Department of Correction ("DOC") officials. Jones alleged that the District Attorney delayed his resentencing by seeking continuances in state court, and he alleged that he should have been moved out of the CCU while he

2

awaited resentencing. Jones alleged constitutional violations relating to the conditions of his confinement on death row, which included a lack of fresh air and exercise, a windowless cell, no opportunity to associate with other inmates, inadequate privacy when he communicated with his attorney, and excessive noise and bad food, among other things. He alleged in particular that solitary confinement violates civilized standards of decency, and that the defendants conspired to continue his unlawful detention in solitary confinement by unlawfully delaying his resentencing. Jones noted that he had unsuccessfully grieved this issue through the prison grievance system in the summer of 2010. Jones sought money damages for the alleged civil rights violations and a transfer into the general prison population.

After Jones amended his complaint, the defendants moved in early 2013 to dismiss it on several grounds, including that Jones' request for injunctive relief was now moot. In the main, the defendants took the position that the complaint was moot, and that, prior to his resentencing, DOC policy required that Jones not be transferred into the general population because in his case the punishment of death could potentially be reimposed at his new penalty hearing. In an order entered on August 30, 2013, the District Court granted the motions to dismiss and dismissed the amended complaint.

Jones appeals. We have jurisdiction under 28 U.S.C. § 1291. Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6. He was invited to submit argument in writing, and he has

3

done so. We have considered his submission, and will address the arguments raised therein.

We will dismiss the appeal in part as moot and in part as frivolous. One purpose, and likely the primary purpose, of Jones' civil rights action, was to hasten his resentencing; he undoubtedly hoped that he would receive a life sentence and be transferred off death row. Within six months of initiating litigation against the defendants, Jones achieved this goal and was transferred into the general population. This is the relief that he requested and thus the appeal is moot to the extent of his request for injunctive relief. The federal courts may adjudicate "only actual, ongoing cases or controversies." Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir. 2009) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). This "case or controversy" requirement continues at the appellate stage and requires that a party like Jones have a personal stake in the outcome. See id. That personal stake in resentencing and transfer off death row is now absent from his case. We are, in this regard, unable to fashion any form of meaningful relief and thus the appeal is moot in part. See Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1246 (3d Cir. 1996).

To the extent that Jones sought money damages for constitutional violations resulting from his confinement on death row prior to his resentencing, we will dismiss the appeal as lacking an arguable basis in fact or law, 28 U.S.C. § 1925(e)(2)(B)(i). With respect to the alleged delay in resentencing, the District Court reviewed the state court docket and determined that the delay was caused by Jones' counsel and not the District Attorney. Defense counsel asked for several continuances in order to prepare for

4

resentencing, according to the state court criminal docket. See PBGC v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993) (court may consider admittedly authentic public document in ruling on motion to dismiss where plaintiff's claim relies on that document). Defense counsel sought continuances, according to the docket, to conduct further investigation and to prepare motions in order to bar re-imposition of the death penalty. On June 11, 2012, Jones filed (in state court) his own motion to be removed from death row, but at no time prior to that date did he file any motions pro se or seek to have defense counsel removed or replaced. The Due Process Clause guarantees a reasonably speedy appeal. Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987). The delay in resentencing Jones was almost 4 years, but he does not dispute that his case remained a capital one, and he did not allege that his counsel's stated need to prepare for resentencing in order to avoid another death sentence was illegitimate. With respect to the issue of prejudice, see id., we note that Jones' convictions for first-degree murder were not vacated, and there was no chance that he would be released outright from prison because in Pennsylvania the sentence for first degree murder is either death or life in prison with no possibility of parole, see 18 Pa. Cons. Stat. Ann. § 1102(a); 61 Pa. Cons. Stat. Ann. § 6137(a)(1). Accordingly, we agree with the District Court that Jones failed to state a plausible constitutional claim relating to the delay in resentencing, and that his amended complaint should be dismissed with respect to the District Attorney. See Fed. R. Civ. Pro. 12(b)(6). See also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

5

To the extent that Jones alleged that the District Attorney and the DOC defendants conspired together to violate his constitutional rights by keeping him on death row until he was resentenced to two life terms, Jones failed to assert facts from which a conspiratorial agreement could be inferred. D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992). Jones' amended complaint was properly dismissed to the extent that his conspiracy allegations failed to state a plausible claim for relief. See Fed. R. Civ. Pro. 12(b)(6); Iqbal, 556 U.S. at 679.

With respect to his continued confinement on death row, Jones alleged that the punishment was excessive in violation of the Eighth Amendment. He does not dispute that state law requires death-sentenced inmates to be housed in solitary confinement, see 61 Pa. Cons. Stat. Ann. § 4303, or that he was a death-sentenced inmate until August, 2007. Moreover, pursuant to DOC policy, inmates like Jones who are awaiting resentencing but who could potentially be resentenced to death must remain on the CCU. The response from prison officials that Jones received to his grievances indicated that, because he was awaiting resentencing where the punishment of death could potentially be reimposed, he was not eligible to be transferred into the general population. Jones challenges the constitutionality of this DOC policy.

In rejecting Jones' argument that the DOC policy is unconstitutional under the Eighth Amendment, the District Court reviewed section 4303, and noted that the Pennsylvania General Assembly vests authority with the DOC to determine how and where to hold inmates, citing 37 Pa. Admin. Code § 93.11(a) ("An inmate does not have a right to be housed in a particular facility or in a particular area within a facility.").

6

Noting that Jones' sentence was not modified until he was resentenced to two life terms, the District Court concluded that there was no constitutional violation in his case because the DOC policy as applied to him was consistent with current contemporary standards as embodied in Pennsylvania legislation, and grounded in well-reasoned policy.

Jones argues that solitary confinement in particular has caused him emotional distress, but "freedom of association is among the rights least compatible with incarceration," Overton v. Bazzetta, 539 U.S. 126, 131 (2003). The restrictions in the CCU undoubtedly make a death-row inmate's confinement more difficult to bear, but the conditions Jones described are not a dramatic departure from accepted standards for conditions of confinement for inmates sentenced to death. Cf. Sandin v. Conner, 515 U.S. 472, 485 (1995). The conditions of that unit are similar to those of administrative or disciplinary custody.[1] In short, Jones failed to allege inhumane prison conditions, that he was deprived of basic necessities, or that the defendants acted with deliberate indifference in failing to protect his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 836 (1994); Wilson v. Seiter, 501 U.S. 294, 298 (1991); Rhodes v. Chapman, 452 U.S. 337, 349 (1981). For this reason, and in view of the fact that Jones could have been resentenced to death, we agree with the District Court that keeping him in the CCU until he was resentenced did not amount to excessive punishment in violation of the Eighth Amendment. It necessarily follows that, because the DOC defendants who

---

[1] We note that the Commonwealth Court has rejected an argument similar to Jones' in Clark v. Beard, 918 A.2d 155 (Pa. Commw. Ct. 2007).

7

applied the policy to Jones did not violate any clearly established constitutional right of his. He is not entitled to any relief.

For the foregoing reasons, we will dismiss the appeal in part as moot and in part as lacking an arguable basis in fact or law, 28 U.S.C. § 1915(e)(2)(B)(i).