IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
January 26, 2022 Session

## ELIJAH "LIJ" SHAW ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal by Permission from the Court of Appeals
Chancery Court for Davidson County
No. 17-1299-II      Anne C. Martin, Chancellor**

———————————————————

**No. M2019-01926-SC-R11-CV**

———————————————————

This appeal addresses mootness when a law challenged in the trial court is altered or amended after the trial court issued its final judgment and while the appeal is pending. The plaintiff homeowners operated businesses out of their homes. They filed a lawsuit against the defendant municipality challenging an ordinance that prohibited them from having clients visit their home-based businesses. The trial court granted summary judgment in favor of the defendant municipality, and the homeowners appealed. While the appeal was pending, the municipality repealed the ordinance that was the subject of the complaint and enacted a new ordinance that allowed limited client visits to home-based businesses. The Court of Appeals held that the repeal of the original ordinance rendered the homeowners' case moot, and the homeowners were granted permission to appeal to this Court. While the appeal to this Court was pending, the ordinance was amended again. On appeal, based on the current record, we cannot determine whether the homeowners suffer ongoing harm from the new ordinance, how the change will affect their claims, and whether they retain some residual claim under the new ordinance. Consequently, we vacate the judgments of the lower courts and remand the case to the trial court for further proceedings in which the parties may amend their pleadings to address any claims the homeowners may assert under the new ordinance.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgments of the Court of Appeals and the Trial Court Vacated;
Case Remanded to the Trial Court**

HOLLY KIRBY, J., delivered the opinion of the court, in which ROGER A. PAGE, C.J., and SHARON G. LEE and JEFFREY S. BIVINS, JJ., joined.

Meggan S. DeWitt, Nashville, Tennessee, Paul V. Avelar, Tempe, Arizona, and Keith Neely, Arlington, Virginia, for the appellants, Elijah Shaw and Patricia Raynor.[1]

Wallace W. Dietz, Lora Barkenbus Fox, and Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson County.

Michael S. Moschel and Sarah V. Belchic, Nashville, Tennessee, for the amicus curiae, National Federation of Independent Business Small Business Legal Center.

Christina Sandefur, Phoenix, Arizona, and Mark A. Fulks, Johnson City, Tennessee, for the amicus curiae, Goldwater Institute.

Daniel A. Horwitz and Lindsay E. Smith, Nashville, Tennessee, for the amicus curiae, Horwitz Law, PLLC.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff/Appellant Elijah "Lij" Shaw is a professional record producer who has lived in East Nashville for a number of years. He renovated the detached garage at his home to create a recording studio called The Toy Box Studio. For several years, Mr. Shaw operated The Toy Box Studio out of his home.

Plaintiff/Appellant Patricia Raynor also lives in Nashville, in the Donelson area, and is a licensed cosmetologist. She operated a single-chair beauty salon in the garage of her home.

The municipal code for Defendant/Appellee Metropolitan Government of Nashville and Davidson County ("Metro") allows residents to operate businesses out of their homes, subject to regulation. At the time this lawsuit was filed, Metro's ordinances regulating home businesses provided that "[n]o clients or patrons may be served on the property" where the business is operated. Metropolitan Government of Nashville & Davidson County, Tenn., Code § 17.16.250(D)(1) (2017) (repealed 2020). In the course of these proceedings, this provision has generally been referred to as the "Client Prohibition." Metro's municipal code contained a few exemptions from the Client Prohibition for uses such as day cares, short-term rentals, and "historic home events."

---

[1] On June 13, 2022, attorneys Jason I. Coleman and Justin D. Owen moved to withdraw as counsel for Plaintiffs and substitute attorney Meggan S. DeWitt in their stead. Those motions were granted on June 23, 2022. Additionally, attorney Keith E. Diggs moved to withdraw as counsel for Plaintiffs on January 31, 2022. That motion was granted on February 3, 2022.

In 2013, Metro received an anonymous complaint that Ms. Raynor had violated the Client Prohibition. In 2015, Metro received an anonymous complaint that Mr. Shaw had violated the Client Prohibition.[2] Metro sent abatement notices to both Ms. Raynor and Mr. Shaw, requiring both to cease and desist. Both complied.

In an effort to remedy the problem, both Mr. Shaw and Ms. Raynor apparently tried to get their properties re-zoned to allow client visits. Neither succeeded.

On December 5, 2017, Mr. Shaw and Ms. Raynor ("Homeowners") filed this lawsuit against Metro in the Chancery Court of Davidson County. The complaint challenged "a single sentence within the Zoning Code," specifically, the Client Prohibition.[3] The complaint asserted as-applied substantive due process claims as well as equal protection claims under the Tennessee Constitution.[4] The complaint reiterated, "The *only* restriction of which [Homeowners] here complain is the Client Prohibition, Metro. Code § 17.16.250(D)(1)." The Homeowners' complaint sought declaratory and injunctive relief.

Metro filed its answer, and discovery ensued. The Homeowners and Metro then filed cross-motions for summary judgment.

After extensive briefing, the trial court granted summary judgment in favor of Metro. In a detailed order, the trial court applied the rational basis test to the Homeowners' claims and held that Metro had "proffered real, rational and appropriately-related reasons for the Client Prohibition" code provision and for the exemptions for certain types of home businesses. The Homeowners appealed to the Court of Appeals.

While the Homeowners' appeal was pending, the Metro Council repealed the Client Prohibition provision that was the subject of the Homeowners' complaint. *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2019-01926-COA-R3-CV, 2021 WL 515887, at *1 (Tenn. Ct. App. Feb. 11, 2021), *perm. app. granted*, (Tenn. July 12, 2021). Metro replaced the Client Prohibition with a new ordinance that allowed home businesses such as the Homeowners' businesses up to three customer visits per hour and six visits per day ("Six-Client Ordinance"). *See* Metro. Code § 17.16.250(D)(3) (2020) (amended 2022). The Six-Client Ordinance contained a sunset provision stating that it "shall expire and be

_____

[2] In the ensuing legal proceedings, the Director of the Metro Department of Codes and Building Safety, Bill Herbert, testified via deposition that "the overwhelming majority" of Client Prohibition enforcement actions arose from anonymous citizen complaints.

[3] It cited "Nashville, Tenn., Metro. Code § 17.16.250(D)(1)."
[4] The Homeowners' equal protection claims cited the exceptions to the Client Prohibition for certain home businesses, such as home day care centers.

null and void on January 7, 2023 unless extended by resolution of the metropolitan council." *Id.* § 17.16.250(D)(9).

The Metro Council's actions prompted Metro to argue to the Court of Appeals that the Homeowners' case had been rendered moot. The Homeowners asked the Court of Appeals to apply the "voluntary cessation" exception to the mootness doctrine. The Homeowners contended that, because Metro had voluntarily chosen to cease engaging in the challenged conduct, Metro would be free to resume that same conduct once the court dismissed the Homeowners' lawsuit. For this reason, they argued, the case should not be declared moot. *Shaw*, 2021 WL 515887, at *2.

The Court of Appeals considered the Homeowners' contention but ultimately held in favor of Metro. Affording Metro "the long-standing rebuttable presumption that government officials will discharge their duties in good faith and in accordance with the law," the appellate court held that the Homeowners' claims were moot. *Id.* at *6–7 (quoting *Norma Faye Pyles Lynch Fam. Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 206 (Tenn. 2009)).

The Homeowners were then granted permission to appeal to this Court. At oral argument in January 2022, the Homeowners emphasized the sunset provision in the Six-Client Ordinance to argue that the Court should apply the voluntary cessation exception to the mootness doctrine and reverse the Court of Appeals' dismissal of their claims. This Court then took the appeal under advisement.

But wait, there's more. In February 2022, after oral argument to this Court, Metro further amended the code. The amendment removed the sunset provision and extended the Six-Client Ordinance "indefinitely."

The Homeowners brought Metro's further amendment of the ordinance to the attention of the Court in a motion to consider post-judgment facts. In that context, post-oral argument, both parties addressed the effect of the amendment on their positions. We address all of their arguments below.

## ANALYSIS

Ultimately, the Homeowners seek an appellate opinion on the merits of their claims. In order to consider the merits of the Homeowners' appeal, however, we must first address the threshold issue of whether their case remains justiciable in light of the undisputed post-judgment facts. *See City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013); *State ex rel. Cunningham v. Farr*, No. M2006-00676-COA-R3-CV, 2007 WL 1515144, at *2 (Tenn. Ct. App. May 23, 2007).

In Tennessee, justiciability does not, strictly speaking, involve jurisdiction, but lack of justiciability can nevertheless compel a court to decline to consider the merits of a case:

> [W]hile Article III, Section 2 of the United States Constitution confines the jurisdiction of the federal courts to "cases" and "controversies," the Constitution of Tennessee contains no such direct, express limitation on Tennessee's courts' exercise of their judicial power.
>
> Despite the absence of express constitutional limitations on the exercise of their judicial power, Tennessee's courts have, since the earliest days of statehood, recognized and followed self-imposed rules to promote judicial restraint and to provide criteria for determining whether the courts should hear and decide a particular case. These rules, commonly referred to as justiciability doctrines, are based on the judiciary's understanding of the intrinsic role of judicial power, as well as its respect for the separation of powers doctrine in Article II, Sections 1 and 2 of the Constitution of Tennessee.
>
> Tennessee's courts believed that the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions. Accordingly, they limited their role to deciding "legal controversies." A proceeding qualifies as a "legal controversy" when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests.

*Norma Faye*, 301 S.W.3d at 202–03 (citations and some quotation marks omitted); *see also Miller v. Miller*, 261 S.W. 965, 971 (Tenn. 1924) ("[T]he question must be a real, and not a theoretical, question; the person raising it must have a real interest to raise it . . . ."). Under the doctrine of justiciability, courts will "stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (citing *State ex rel. Lewis v. State*, 347 S.W.2d 47, 48 (Tenn. 1961); *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977)). Cases must remain justiciable throughout the entire litigation, including appeal. *Id.*

Justiciability encompasses several distinct doctrines, one of which is at issue in this appeal, namely, mootness. *See Hargett*, 414 S.W.3d at 96. A case may be deemed moot if it loses its justiciability "either by court decision, acts of the parties, or some other reason occurring after commencement of the case." *Norma Faye*, 301 S.W.3d at 204 (citing *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 625 (Tenn. 2008); *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945); *McIntyre*, 884 S.W.2d at 137). It will be considered moot if the case can no longer serve as a means of providing some type of judicial relief to

the prevailing party. *Id.* "If it becomes apparent that a case has become moot while an appeal is pending, the judgment below normally is vacated with directions to dismiss the complaint." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288 n.9 (1982) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)).

This Court has recognized a handful of situations in which invoking the mootness doctrine may not be appropriate. One such situation is "voluntary cessation."[5] *Norma Faye*, 301 S.W.3d at 204–05. Under this exception, a defendant's decision to voluntarily cease engaging in the challenged conduct generally will not moot a case because courts are wary of "permitting a litigant to cease its wrongful conduct temporarily to frustrate judicial review and then be free to resume the same conduct after the case is dismissed as moot." *Id.* at 205 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). Even where there is voluntary cessation, however, a court may nonetheless dismiss a case as moot if the court determines it is "absolutely clear that the allegedly wrongful conduct cannot be reasonably expected to recur." *Id.* (citing *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007); *Friends of the Earth*, 528 U.S. at 189).

Much of the Court of Appeals' analysis centered on voluntary cessation in light of Metro's repeal of the Client Prohibition, the effect of Metro's enactment of the Six-Client Ordinance and its related sunset provision, whether it was clear that the prior Client Prohibition could not "reasonably be expected to recur," and whether Metro's repeal of the Client Prohibition should be afforded a presumption of good faith. *See Shaw*, 2021 WL 515887, at *5–6. The intermediate appellate court applied the standard adopted by the United States Court of Appeals for the Sixth Circuit for voluntary cessation by a governmental entity: "Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case unless there are clear contraindications that the change is not genuine." *Id.* at *7 (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019)). Using that framing, it declined to apply the exception for voluntary cessation, concluded the case was moot, and remanded the case to the trial court for dismissal. *Id.* at *7–8.

On appeal to this Court, much of the briefing and argument likewise focused on the repeal of the Client Prohibition, the effect of the Six-Client Ordinance and the sunset provision, and whether this Court should apply the *Speech First* presumption of good faith to Metro's repeal and replacement of the Client Prohibition. The Homeowners argued that, in light of the sunset provision, Metro's repeal of the Client Prohibition should be considered only a temporary pause. Even under the *Speech First* standard, they said, it was

---

[5] In this appeal, in addition to relying on the voluntary cessation exception, the Homeowners contend that the public interest exception to the mootness doctrine applies. *See Norma Faye*, 301 S.W.3d at 210–11.

- 6 -

not clear that Metro would not resume enforcement of the original Client Prohibition against the Homeowners once it allowed the Six-Client Ordinance to sunset.

However, at oral argument, Metro clarified that the sunset provision applied only to the Six-Client Ordinance and not to the repeal of the Client Prohibition. Thus, if the Metro Council took no further action and allowed the Six-Client Ordinance to sunset, the repeal of the Client Prohibition would remain in place. In that circumstance, the Metro Code would simply not address whether home businesses such as the Homeowners' could have client visits.

The Homeowners contended at oral argument that, despite Metro's clarification of the effect of the sunset provision, their claims are not moot because the Six-Client Ordinance still unfairly limits their home businesses while other home businesses such as home day care businesses remain exempt. They cited language in a United States Supreme Court decision, *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, to the effect that the Homeowners' claims are not mooted by enactment of a replacement ordinance if the new ordinance "disadvantages them in the same fundamental way." 508 U.S. 656, 662 (1993). Metro continued to emphasize the argument it made in its briefs, that the case is moot because the singular provision that was the subject of the Homeowners' complaint, the Client Prohibition, was repealed for good.

As noted above, after oral argument, Metro further amended the Six-Client Ordinance by removing the sunset provision and extending the new ordinance "indefinitely." In the context of their motion to consider post-judgment facts, the Homeowners conceded that, by removing the sunset provision and extending the Six-Client Ordinance indefinitely, Metro had adopted "[a] permanent policy change by a government entity that is not likely to be abandoned once the immediate threat of litigation is passed."[6] *Norma Faye*, 301 S.W.3d at 207. They insisted, however, that the case had not been mooted by this turn of events, explaining that while the Six-Client Ordinance disadvantages the Homeowners *less* than the Client Prohibition did, it nevertheless continues to disadvantage them in the same way. *See Ne. Fla. Chapter of the Associated Gen. Contractors of Am.*, 508 U.S. at 662.

In response, Metro noted that the recent amendment removed the concern underlying the voluntary cessation exception, namely, that a dismissal for mootness could allow Metro to temporarily cease its wrongful conduct to avoid judicial review and then resume the same conduct after dismissal. *See Norma Faye*, 301 S.W.3d at 205. In reply to the Homeowners' contention that they remain disadvantaged by the Six-Client

---

[6] In light of this concession by the Homeowners, as well as our ultimate disposition of the case, we need not address the Court of Appeals' adoption of the standard articulated in *Speech First, Inc.*, 939 F.3d at 768.

Ordinance, only to a lesser degree, Metro reiterated that Homeowners' complaint never challenged the Six-Client Ordinance; it *only* challenged the now-repealed Client Prohibition. While the Homeowners are free to file a *new* lawsuit challenging the Six-Client Ordinance, Metro maintained, they cannot do so in this lawsuit, which is now moot.

We consider first the most recent argument put forth by the Homeowners—that the new Six-Client Ordinance continues to disadvantage them in the same way, though to a lesser degree—because this argument goes to whether there remains any actual controversy between the parties and whether the case can still serve as a means of providing practical judicial relief to the Homeowners. *Norma Faye*, 301 S.W.3d at 204. We begin by examining the Supreme Court's reasoning in the case the Homeowners cite, *Northeastern Florida*.

In that case, the City of Jacksonville enacted an ordinance that required a portion of funds spent on city contracts to be set aside for minority-owned businesses. *Ne. Fla. Chapter of the Associated Gen. Contractors of Am.*, 508 U.S. at 658–59. The plaintiff association of construction contractors filed a lawsuit contending the ordinance violated the federal Equal Protection Clause. *Id.* at 659. The Court of Appeals for the Eleventh Circuit dismissed the claim on the basis that the association lacked standing. *Id.* at 660.

After the Supreme Court granted certiorari to address standing, the city repealed the subject ordinance and enacted a new ordinance that narrowed the definition of who qualified for the awards and altered the method of calculating the set-aside amount. *See id.* at 660–61. The city argued that this action mooted the case because there "was no longer a live controversy with respect to the constitutionality of the repealed ordinance." *Id.* at 661.

The Supreme Court rejected this argument, noting that repeal alone does not moot a case if there is still ongoing harm:

> There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so. Nor does it matter that the new ordinance differs in certain respects from the old one. . . . [I]f that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect. The gravamen of petitioner's complaint is that its members are disadvantaged in their efforts to obtain city contracts. The new ordinance may disadvantage them to a lesser degree than the old one, but . . . it disadvantages them in the same fundamental way.

*Id.* at 662. For that reason, the majority declined to declare the case moot and went on to address the standing issue. *Id.* at 663.

The two justices who dissented in *Northeastern Florida* did not disagree with the principle cited by the majority. The dissent in fact elaborated on it and contended the majority should have used a more traditional cautious approach:

Earlier this Term, the Court reaffirmed the longstanding rule that a case must be dismissed as moot if an event occurs . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party. That principle applies to challenges to legislation that has expired or has been repealed, where the plaintiff has sought only prospective relief. If the challenged statute no longer exists, there ordinarily can be no real controversy as to its continuing validity, and an order enjoining its enforcement would be meaningless. In such circumstances, it is well settled that the case should be dismissed as moot.

The analysis varies when the challenged statute is amended or is repealed but replaced with new legislation. I agree with the Court that a defendant cannot moot a case simply by altering the law "in some insignificant respect." We have recognized, however, that material changes may render a case moot. It seems clear, for example, that when the challenged law is revised so as plainly to cure the alleged defect, or in such a way that the law no longer applies to the plaintiff, there is no live controversy for the Court to decide. Such cases functionally are indistinguishable from those involving outright repeal: Neither a declaration of the challenged statute's invalidity nor an injunction against its future enforcement would benefit the plaintiff, because the statute no longer can be said to affect the plaintiff.

A more difficult question is presented when, after we have granted review of a case, the challenged statute is replaced with new legislation that, while not obviously or completely remedying the alleged infirmity in the original act, is more narrowly drawn. The new law ultimately may suffer from the same legal defect as the old. But the statute may be sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided.

*Id.* at 669–71 (O'Connor, J., dissenting) (citations and some quotation marks omitted).

The dissent then discussed two prior cases in which a challenged statute was repealed and replaced by new legislation, and it was unclear whether the plaintiffs would be subject to the new legislation or whether it would affect them in a similar way. *See id.* at 671–72 (citing *Diffenderfer v. Cent. Baptist Church of Mia., Inc.*, 404 U.S. 412 (1972)

(per curiam); *Fusari v. Steinberg*, 419 U.S. 379 (1975)).  In those cases, the dissent noted, the Court recognized that the original relief sought by the plaintiffs was no longer appropriate, but instead of simply ordering dismissal, it vacated the lower courts' judgments and remanded with leave to amend or for reconsideration under the new statutes. *Id.*  The dissent disagreed with the *Northeastern Florida* majority's conclusion that the new minority set-aside ordinance did not differ significantly from the original ordinance and argued that the wiser course would have been to remand to permit the plaintiffs to challenge the new ordinance.  *Id.* at 675.

Thus, there was no disagreement between the majority and the dissent in *Northeastern Florida* on the basic principle.  They disagreed only on where to draw the line—whether the new ordinance in that case was sufficiently similar to the original ordinance to warrant an outright finding at the appellate level that the case was not moot.

In a recent decision, the United States Supreme Court applied and summarized this same approach:

> Our ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss.  However, in instances where the mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, our practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully.

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam) (citations omitted) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482–83 (1990)).  In *New York State Rifle*, the Court granted certiorari to review a New York City rule that prevented the petitioners from transporting firearms to a second home or to a shooting range outside the city.  *Id.*  After the Court granted certiorari, the city amended the rule to allow the petitioners to transport firearms to a second home or a shooting range outside the city, the relief sought in their complaint.  *Id.*  The petitioners argued that the new rule still infringed on their rights in a variety of ways.  *Id.*

The majority in *New York State Rifle* vacated the ruling of the intermediate appellate court and remanded the case to the district court with directions to permit the petitioners to amend their pleadings and add a claim for damages under the prior rule.  *Id.* at 1526–27. Three justices dissented, arguing that the majority's decision to vacate and remand was inappropriate because even if the petitioners' remaining interest in the outcome of the lawsuit was small, it was sufficient to defeat a finding of mootness.  *Id.* at 1528 (Alito, J.,

dissenting). The dissent did not disagree with the principle cited by the majority, only the result under the particular facts of that case.

State and federal courts have employed this same approach in a variety of cases, with outcomes dependent primarily on the particular facts in a given case. *See, e.g.*, *Chrysafis v. Marks*, 15 F.4th 208, 215 (2d Cir. 2021) (remanding where the court "cannot be certain how the new [law] will be implemented in practice"); *Foremost Signature Ins., MI v. Silverboys*, *LLC*, 793 F. App'x 962, 965 (11th Cir. 2019) (dismissing instead of granting leave to amend where the parties "had ample opportunity before the district court to fully develop the record"); *Hill v. Snyder*, 821 F.3d 763, 770–71 (6th Cir. 2016) (remanding where the district court "has not yet had an opportunity to consider the legislative changes"); *Am. Ins. Ass'n v. State Indus. Comm'n*, 745 P.2d 737, 740 (Okla. 1987) (granting leave to amend in light of new legislation); *Knowles v. State Bd. of Educ.*, 547 P.2d 699, 705 (Kan. 1976) (same); *In re Riverwoods Park Dist.*, 617 N.E.2d 464, 473 (Ill. App. Ct. 1993) (remanding since "the new law was not in effect at the time the petition was filed," raising factual questions "which this court cannot resolve on the basis of the record on appeal").

We agree with this approach. The baseline, as observed in *Norma Faye*, is that a case is considered moot "if it no longer serves as a means to provide some sort of judicial relief to the prevailing party." 301 S.W.3d at 204 (citing *Knott v. Stewart Cnty.*, 207 S.W.2d 337, 338–39 (Tenn. 1948); *Bell v. Todd*, 206 S.W.3d 86, 96 (Tenn. Ct. App. 2005); *Massengill v. Massengill*, 255 S.W.2d 1018, 1019 (Tenn. Ct. App. 1952)). Where a lawsuit challenges a statute or ordinance and seeks only prospective relief, and the statute or ordinance is simply repealed, the case will ordinarily be dismissed as moot because it is no longer possible for the court to grant any effectual relief. *See Ne. Fla. Chapter of the Associated Gen. Contractors of Am.*, 508 U.S. at 669–70 (O'Connor, J., dissenting).

The analysis changes, however, if the challenged law is amended or is repealed and replaced with a new law. *Id.* at 670. On one end of the continuum, a defendant cannot moot a case by altering the challenged law in an insignificant way. *Id.* On the other end of the continuum, if the challenged law is changed so as to clearly cure the alleged defect or in such a way that it no longer applies to the plaintiff, plainly there remains no "live controversy" for the court to decide. *Id.* "Such cases functionally are indistinguishable from those involving outright repeal" and should be deemed moot. *Id.*

Inhabiting the gray area in the middle is the situation where, while an appeal is pending, the challenged law is replaced by a new law that does not clearly or completely remedy the defect asserted by the plaintiff but "is more narrowly drawn." *Id.* at 671. In such circumstances, it may ultimately turn out that the new law retains the same "legal defect" as the old law. *Id.* But it may also turn out that the challenged law was altered in a way that presents "a substantially different controversy" from the one originally decided

- 11 -

by the trial court. *Id.* When the appellate court "cannot be sure how the statutory changes will affect the plaintiff's claims," it should consider vacating the lower court's decision and remanding to the trial court with instructions to permit the plaintiff to amend, including amendment to challenge the new law. *Id.* at 673, 675. The determination of whether a case should be remanded with leave to amend, rather than dismissed as moot, turns on the facts and circumstances of each case. *Cf. Norma Faye*, 301 S.W.3d at 204 (noting that mootness depends on the facts and circumstances of each case).

In the case at bar, the Homeowners assert that Metro's new Six-Client Ordinance is only an insignificant change from the prior Client Prohibition. They contend "Metro has not ceased discriminating against" them, compared to home-based businesses that were exempt from the Client Prohibition and remain exempt from the Six-Client Ordinance. The gravamen of their equal protection claim, the Homeowners argue, is that their home-based businesses are disadvantaged as to the number of client visits in comparison to home-based businesses that are allowed twelve clients per day. They contend they seek declaratory and injunctive relief under the Tennessee Constitution to the extent Metro prohibits them from serving up to twelve clients per day at their home businesses.

In response, Metro points out that the Homeowners' complaint sought *only* to challenge the now-repealed Client Prohibition. Metro emphasizes, "[T]he facts alleged in the Complaint and the Trial Court's ruling addressed and analyzed only the legality of a complete ban on clients." There is no longer a sunset provision attached to the Six-Client Ordinance, and removal of the sunset provision also removed any likelihood that the Client Prohibition will be resurrected. In this circumstance, Metro posits, the Homeowners' case is simply moot.

As to the Homeowners' contention that the Six-Client Ordinance is only an "insignificant" change, we cannot go that far. On the other hand, we cannot agree with Metro's position that we should consider *only* whether the case can serve as a means of providing judicial relief under the *original* ordinance and blind ourselves to any claims the Homeowners may have under the new ordinance. *Norma Faye*, 301 S.W.3d at 204. This case falls into the gray area described by the dissent in *Northeastern Florida*, where the challenged ordinance has been replaced by a new ordinance that, while not completely remedying the alleged problem with the original ordinance, is "more narrowly drawn." 508 U.S. at 671 (O'Connor, J., dissenting).

Without question, the original relief sought by the Homeowners, declaratory and injunctive relief as to the Client Prohibition, is no longer appropriate. However, because Metro repealed and replaced the Client Prohibition after the trial court proceedings were completed, the record contains no information on whether or how the new Six-Client Ordinance will affect the Homeowners, or whether they "may have some residual claim under the new framework that was understandably not asserted previously." *N.Y. State*

*Rifle & Pistol Ass'n*, 140 S. Ct. at 1526 (quoting *Lewis*, 494 U.S. at 482).  It may turn out that the Six-Client Ordinance has the same alleged legal flaw as the Client Prohibition, that it altered the law in a way that presents significantly different issues, or that it simply has no adverse effect on the Homeowners.  At this juncture, the record on appeal does not contain all of the information needed to determine whether the case can still be a means of "provid[ing] some sort of judicial relief" to the Homeowners.  *Norma Faye*, 301 S.W.3d at 204 (citing *Knott*, 207 S.W.2d at 338–39; *Bell*, 206 S.W.3d at 96; *Massengill*, 255 S.W.2d at 1019).

Mindful of the Homeowners' right to judicial review of their claims, but also mindful of our obligation to be careful stewards of our judicial power, the prudent course is for us to vacate the judgments of the lower courts and remand the case to the trial court, to permit the parties to amend their pleadings, and for any further proceedings consistent with this Opinion, in the sound discretion of the trial court.

This holding pretermits all other issues raised on appeal.

## CONCLUSION

We hold that, on this record, we cannot determine whether the Homeowners suffer ongoing harm from the new ordinance, how the changes to the Metro ordinance will affect their claims, and whether they still have some residual claim under the new ordinance. Consequently, we vacate the judgments of the Court of Appeals and the trial court below and remand the case to the trial court for further proceedings consistent with this Opinion. Costs on appeal are taxed one half to the Plaintiffs, Elijah Shaw and Patricia Raynor, and one half to the Defendant, Metropolitan Government of Nashville and Davidson County, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE